1  **REZA ATHARI, ESQ.**
   CA Bar No. 186915
2  **REZA ATHARI & ASSOCIATES, PLLC**
   **A Multi-jurisdictional Law Office**
3  3365 Pepper Lane, Suite #102
   Las Vegas, NV 89102
4  Tel.: (702) 458-8584
   Fax: (702) 458-8508
5  Attorney for Plaintiff

6

7              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN JOSE DIVISION**
8

9  **JORGE ADAN ARREOLA**
                **Plaintiff,**                          **Case No.  C 08-777 JF**
10
                                                        **PLAINTIFF'S OPPOSITION TO**
11                                                      **DEFENDANTS' MOTION FOR**
                **v.**                                  **SUMMARY JUDGMENT**
12

13 **MICHAEL B. MUKASEY, U.S. ATTORNEY,**               **Date of Hearing:    July 18, 2008**
   **GENERAL, et. al.**                                 **Time of Hearing:    9:00 a.m.**
14              **Defendants.**                         **Courtroom:          3**

15

16        **COMES NOW**, the Plaintiff, JORGE ADAN ARREOLA, through counsel, REZA

17 ATHARI, ESQ., of REZA ATHARI & ASSOCIATES, and hereby submits an Opposition to the

18 Defendant's Motion for Summary Judgment in this matter.

19        This Opposition is based upon the Brief in support of the Opposition to the Motion for

20 Summary Judgment, the prior proceedings hereinafter had herein, and any oral argument that this

21 Court entertains in decision this motion at the time of the hearing.

22        DATED:        this 27th day of June 2008

23                                              Respectfully Submitted,

24                                              _____
                                                REZA ATHARI, ESQ.
25                                              CA Bar No. 186915
                                                **REZA ATHARI & ASSOCIATES, PLLC**
26                                              **A Multijurisdictional Law Office**
                                                3365 Pepper Lane, Suite #120
27                                              Las Vegas, NV 89102
                                                Tel.: (702) 458-8584
28

1  **REZA ATHARI, ESQ.**
CA Bar No. 186915
2  **REZA ATHARI & ASSOCIATES, PLLC**
**A Multi-jurisdictional Law Office**
3  3365 Pepper Lane, Suite #102
Las Vegas, NV 89102
4  Tel.: (702) 458-8584
Fax: (702) 458-8508
5  Attorney for Plaintiff

6                  **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
7                     **SAN JOSE DIVISION**

8  **JORGE ADAN ARREOLA**
                    **Plaintiff,**                    **Case No.  C 08-777 JF**
9

10           **v.**

11
   **MICHAEL B. MUKASEY, U.S. ATTORNEY,**
12 **GENERAL, et. al.**
                    **Defendants.**
13

14

15

16

17       **PLAINTIFF'S BRIEF IN SUPPORT OF OPPOSITION**

18

19

20                                   Respectfully Submitted,

21

22                                   **REZA ATHARI, ESQ.**
                                     CA Bar No. 186915
23                                   **REZA ATHARI & ASSOCIATES, PLLC**
                                     **A Multi-jurisdictional Law Office**
24                                   3365 Pepper Lane, Suite #102
                                     Las Vegas, NV 89102
25                                   Tel.: (702) 458-8584
                                     Fax: (702) 458-8508
26                                   Attorney for Plaintiff

27

28

1

**TABLE OF CONTENTS**

2  STATEMENT OF ISSUE ........................................................ 3

3  STATEMENT OF FACTS ....................................................... 3

4  LEGAL STANDARD .......................................................... 5

5     A.   LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT ..... 5

6     B.   LEGAL STANDARD FOR RELIEF FOR WRIT OF MANDAMUS ........ 5

7     C.   LEGAL STANDARD FOR RELIEF UNDER THE
           ADMINISTRATIVE PROCEDURE ACT ............................. 6
8
       D.   LEGAL STANDARD FOR PETITIONER'S DECLARATORY RELIEF .... 7
9
       E.   PROCEDURE FOR NATURALIZATION APPLICATION .............. 7
10
   ANALYSIS .................................................................. 8
11
       A.   THE DEFENDANT'S MOTION MUST FAIL BECAUSE THERE EXISTS
12          A GENUINE ISSUE OF MATERIAL FACT IN THAT DEFENDANTS OWED
            PLAINTIFF A NON-DISCRETIONARY DUTY TO CONDUCT
13          A NATURALIZATION EXAMINATION ............................ 8

14     B.   THE CLAIMS AGAINST DEFENDANTS MUKASEY AND MUELLER
            SHOULD NOT BE DISMISSED ................................. 17
15
       C.   IF THE COURT HAS SUBJECT MATTER JURISDICTION AGENCY
16          ACTION HAS BEEN UNREASONABLY DELAYED ................... 18

17  CONCLUSION ............................................................. 21

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3 **FEDERAL STATUTES**

4  Fed. R. Civ. P. 56(c) ................................................. 5

5  28 U.S.C. §1361 ..................................................... 5

6  8 U.S.C. §1446 ...................................................... 5

7  8 U.S.C. §1447 ...................................................... 5

8  8 U.S.C. 1427 ....................................................... 5

9  5 U.S.C. § 555(b) .............................................. 6, 12, 13

10 5 U.S.C. § 706(1) .................................................... 6

11 28 U.S.C. § 702 .................................................. 6, 14

12 28 U.S.C. § 1331 ................................................. 7, 13

13 28 U.S.C. § 2201 ..................................................... 7

14 **FEDERAL REGULATIONS**

15 8 C.F.R. 335.1 ............................................... 7, 10, 11

16 8 C.F.R. § 335.2 ........................................... 7, 9, 10, 12

17 8 C.F.R § 334.2 ..................................................... 9

18 8 C.F.R. 316.14(b)(1) ............................................... 10

19 8 C.F.R. § 335.3(a) ............................................. 10, 11

20 **CASES**

21 *Celotex Corp. v. Catrett*

22     477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................ 5

23 *Anderson v. Liberty Lobby, Inc.,*

24     477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..................... 5, 21

25 *Adickes v. S. H. Kress & Co.,*

26     398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ..................... 5

27 *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,*

28     809 F.2d 626, 630 (9th Cir. 1987) ............................................. 5

*Kildare v. Saenz*

1        325 F.3d 1078, 1084 (9th Cir. 2003)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2    *Patel v. Reno*

3        134 F.3d 929, 931 (9th Cir. 1998)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4    *Block v. Community Nutrition Institute*

5        467 U.S. 340, 349, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984)   . . . . . . . . . . . . . . . . . . . . . 6

6    *Norton v. S. Utah Wilderness Alliance*

7        542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)   . . . . . . . . . . . . . . . . . . . . 6, 11

8    *Califano v. Sanders*

9        430 U.S. 99, 107, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)   . . . . . . . . . . . . . . . . . . . . . . 7

10   *Idaho Watersheds Project v. Hahn*

11       307 F.3d 815, 830 (9th Cir. 2002)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12   *Skelly Oil Co. v. Phillips Petroleum Co.*

13       339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)   . . . . . . . . . . . . . . . . . . . . . . 7

14   *Lear Siegler, Inc. v. Adkins*

15       330 F.2d 595, 599 (9th Cir. 1964)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16   *Moretazpour v. Chertoff,*

17       No. C 07-4264 2007 U.S. Dist. LEXIS 92047 (N.D. Ca. Dec. 5, 2007)   . . . . 8, 9, 15, 16, 17

18   *Kaplan v. Chertoff*

19       481 F.Supp.2d 370, 401 (E.D. Pa.)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 17

20   *Al Daraji v. Monica,*

21       2007 U.S. Dist. LEXIS 76205, 2007 WL 2994608 (E.D. Pa.)   . . . . . . . . . . . . . . . . . . . . 9

22   *Ahmadi v. Chertoff*

23       2007 U.S. Dist. LEXIS 81629, 2007 WL 3022573 (N.D. Cal.)   . . . . . . . . . . . . . . . . . . . . 9

24   *Sidhu. Chertoff,*

25       No. 1:07-CV-1188 2008 U.S. Dist. LEXIS 13804, (E.D. Ca. Feb. 25, 2008)   . . . 9, 15, 16, 18

26   *Hanbali v. Chertoff*

27       No. 3:07CV-50-H, 2007 U.S. Dist. LEXIS 65742, (W.D. Ky. Aug. 17, 2007)   . . . 10, 12, 15

28   *Weiming Jiang,* v. Chertoff,

         No. C 08-00332 SI 2008 Lexis 42640 (N.D. Cal. April 28, 2008)   . . . . . . . . . . . . 10, 16, 17

1  *Wang v. Mukasey,*

2      No. 07-6266, 2008 WL 1767042, (N.D. Cal. April 16, 2008) . . . . . . . . . . . . . . 10, 16, 17, 18

3  *Dairi v. Chertoff*

4      07-cv-1014 JM(JMA), 2007 WL 3232503 (S.D. Cal. Nov. 1, 2007) . . . . . . . . . . . . . . . . . 10

5  *Assadzadeh v. Mueller,*

6      No. 07-2676, 2007 U.S. Dist. LEXIS 80915, 13-14 (E.D. Pa. Oct. 31, 2007) . . . . . . . . . . . 11

7  *Shaat v. Klapakis*

8      No. 06-5625, 2007 U.S. Dist. LEXIS 70338, E.D. Pa. Sept. 21, 2007) . . . . . . . . . . . . . . . . 11

9  *Gelfer v. Chertoff*

10      2007 U.S. Dist. LEXIS 26466, 2007 WL 902382 (N.D.Cal. 2007) . . . . . . . . . . 12, 15, 16, 18

11  *Singh v. Still,*

12      470 F. Supp. 2d 1064, 2007 (N.D. Cal. Jan. 8, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13  *Aslam v. Mukasey,*

14      531 F. Supp 736  (E.D. Va. Jan. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

15  *Salehian v. Novak,*

16      No. 06-459, 2006 U.S. Dist. LEXIS 77028, (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . 14

17  *Xu v. Chertoff*

18      No. 07-366, 2007 U.S. Dist. LEXIS 50027 (D.N.J. July 11, 2007) . . . . . . . . . . . . . . . . . . . 14

19  *Memphis Trust Co. v. Bd. of Governors of Fed. Reserve Serv.*

20      584 F.2d 921, 925 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21  *Telecomm. Research and Action Ctr. v. FCC,*

22      750 F.2d 70, 80 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

23  *Shaikh v. Gonzales*

24      2007 U.S. Dist. LEXIS 88832, 2007 WL 4259410 (N.D. Cal.) . . . . . . . . . . . . . . . 18, 19, 20

25  *Huang v. Chertoff,*

26      2007 U.S. Dist. LEXIS 48330, 2007 WL 1831105 (N.D.Cal.) . . . . . . . . . . . . . . . . . . . . . . . 19

27

28

1 | **REZA ATHARI, ESQ.**
CA Bar No. 186915
2 | **REZA ATHARI & ASSOCIATES, PLLC**
**A Multi-jurisdictional Law Office**
3 | 3365 Pepper Lane, Suite #102
Las Vegas, NV 89102
4 | Tel.: (702) 458-8584
Fax: (702) 458-8508
5 | Attorney for Plaintiff

6 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
7 | **SAN JOSE DIVISION**

8 | **JORGE ADAN ARREOLA**
                        **Plaintiff,**                    **Case No.  C 08-777 JF**
9 |

10 |              **v.**

11 |
**MICHAEL B. MUKASEY, U.S. ATTORNEY,**
12 | **GENERAL, et. al.**
                        **Defendants.**
13 |

14 |
                                    **I.**
15 |
                                  **ISSUE**
16 |
          Why the Defendant's motion for summary judgment should be dismissed
17 |
                                    **II.**
18 |
                          **STATEMENT OF FACTS**
19 |
          Plaintiff, Jorge Adan Arreola, (hereinafter "Mr. Arreola") is a thirty nine year old year, male,
20 |
who is a citizen and national of Mexico.  Plaintiff was admitted into the United States as a lawful
21 |
permanent resident on or about November 13, 2001.  On or about September 6, 2006, Mr. Arreola
22 |
filed an application for naturalization with the Defendant's United States Citizenship & Immigration
23 |
Services (hereinafter "USCIS").[1]
24 |
          At the time of his application, Mr. Arreola understood the English language, in that he had
25 |
an ability to read, write, and speak words in the ordinary usage of the English language.[2]  After being
26 |

27 |
          [1]        Attached hereto as **Exhibit "1"** in the Appendix is a copy of the receipt for the
28 | naturalization application.

          [2]        Attached hereto as **Exhibit "2"** in the Appendix is the Affidavit of the Petitioner, Jorge
Adan Arreola.

1  issued lawful permanent residence, Mr. Arreola had been physically present in the United for at least

2  five years immediately preceding the date of filing his application for naturalization and had resided

3  within the State or within the district of the Service in the United States in which he filed the

4  application for at least three months.[3] Mr. Arreola had resided continuously within the United States

5  from the date of the application up to the time of admission to citizenship.[4] Mr. Arreola had not

6  been absent from the United States for more than six months during the period from which physical

7  presence was required for naturalization.[5] During the period needed, Mr. Arreola had been and still

8  was a person of good moral character, attached to the principles of the Constitution of the United

9  States, and well disposed to the good order and happiness of the United States.[6] Mr. Arreola had no

10 criminal history in the United States.

11     Mr. Arreola was prepared to demonstrate the requisite knowledge of United States

12 history and the United Stats form of government.[7] Mr. Arreola had met all of the requirements to

13 have a naturalization examination conducted by the Defendants. Since September 6, 2006, CIS has

14 failed to schedule a naturalization examination for Mr. Arreola. Since September 6, 2006, upon

15 information and belief, CIS has failed to complete a background check of Mr. Arreola.

16     As a result, CIS has failed to perform a ministerial duty owed to Mr. Arreola by scheduling a

17 naturalization examination.

18     Mr. Arreola has filed a Petition for Alien Relative (Form I-130) on behalf of his wife, Maria

19 Magdalena Ortega.[8] The visa petition was approved by the Defendant's Citizenship & Immigration

20 Services on or about April 25, 2007.[9]

21

22

---

23   [3]   Please refer to **Exhibit "2."**

24   [4]   Please refer to **Exhibit "2."**

25   [5]   Please refer to **Exhibit "2."**

26   [6]   Please refer to **Exhibit "2."**

27   [7]   Please refer to **Exhibit "2."**

28   [8]   Attached hereto as **Exhibit "3"** in the Appendix is a copy of the visa petition.

     [9]   Attached hereto as **Exhibit "4"** in the Appendix is a copy of the approval notice.

1   Mrs. Ortega is in removal proceedings but will be eligible to adjust her status under §245(i)

2   of the Immigration & Nationality Act upon approval of her husband's application for naturalization.

3   Mrs. Ortega is scheduled to appear before an Immigration Judge on September 9, 2008 at 1:00

4   p.m.[10]

5                                        **III.**

6                               **LEGAL STANDARD**

7   **A.      LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT**

8         A motion for summary judgment may be granted only where there is "no genuine issue as to

9   any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

10  P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

11  When assessing the record to make this determination, the "evidence of the non-movant is to be

12  believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,*

13  477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (*citing,  Adickes v. S. H. Kress & Co.,*

14  398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).  A genuine issue of material fact

15  exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

16  *Anderson supra,* at 248.

17        The court's function on a summary judgment motion is not to make credibility determinations

18  or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific*

19  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the

20  light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be

21  viewed in a light most favorable to the nonmoving party. *See id.* at 631.

22  **B.      LEGAL STANDARD FOR RELIEF FOR WRIT OF MANDAMUS**

23        Mr. Arreola asserts that this Court has subject matter jurisdiction to entertain his writ of

24  mandamus under 28 U.S.C. §1361 to compel CIS to conduct a naturalization examination  in

25  accordance with  8 U.S.C. §1446, 8 U.S.C. §1447, 8 U.S.C. 1427.  Pursuant to 28 U.S.C. §1361, the

26  statute reads as follows:

27

28

---

[10]      Attached hereto as **Exhibit "5"** in the Appendix is a copy of the Notice of Hearing for
Mrs. Ortega.

1
2
"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

3    In general, a party seeking a writ of mandamus must show that "(1) the individual's claim is

4    clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as

5    to be free from doubt; and (3) no other adequate remedy is available." *Kildare v. Saenz,* 325 F.3d

6    1078, 1084 (9th Cir. 2003), (quoting *Patel v. Reno,* 134 F.3d 929, 931 (9th Cir. 1998)).

7    **C.    LEGAL STANDARD FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

8

9    The Supreme Court has stated that there is a "presumption favoring judicial review of

10    administrative action," and that it "may be overcome by specific language or specific legislative

11    history that is a reliable indicator of congressional intent." *Block v. Community Nutrition Institute,*

12    467 U.S. 340, 349, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984). The APA requires an administrative

13    agency to act upon matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and

14    provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably

15    delayed." Id. 706(1).

16    Pursuant to the APA, and "with due regard for the convenience and necessity of the parties or

17    their representatives and within a reasonable time, each agency shall proceed to conclude a matter

18    presented to it." 5 U.S.C. § 555(b). Courts have the authority to "compel agency action unlawfully

19    withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the Supreme Court has "limited that

20    authority to compelling ministerial, non-discretionary actions-actions the agency is legally *required*

21    to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137

22    (2004).

23    "To invoke jurisdiction under these statutes, Plaintiffs must show that: (1) an agency had a

24    nondiscretionary duty to act and (2) the agency unreasonably delayed action on that duty. *Norton v.*

25    *S. Utah Wilderness Alliance*, *supra*, at 63-64. "[A] person suffering legal wrong because of agency

26    action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,

27    is entitled to judicial review thereof." 28 U.S.C. § 702. This includes judicial review to "compel

28    agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, a party is

not entitled to judicial review under the APA if the action in question is discretionary. 5 U.S.C. §

701(a)(2). Also, the APA alone does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). However, this Court has jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, the APA in conjunction with 28 U.S.C. § 1331, gives the court jurisdiction to compel action from a government agency unlawfully withheld or unreasonably delayed. *Idaho Watersheds Project v. Hahn,* 307 F.3d 815, 830 (9th Cir. 2002).

### D.    LEGAL STANDARD FOR PETITIONER'S DECLARATORY RELIEF

Title 28 U.S.C. § 2201 (hereinafter "DJA") states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights  and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Although the DJA enlarged the range of remedies available in federal courts, it did not extend federal courts' jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950). The DJA does not establish a new basis for jurisdiction in the federal courts, but merely establishes a new remedy, available in cases in which jurisdiction otherwise exists. *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964).

As previously asserted, as will be explained in greater detail below, this Court has jurisdiction to entertain Mr. Arreola's mandamus claim and therefore an additional remedy for Mr. Arreola before this Court, is his right to declaratory relief.

### E.    PROCEDURE FOR NATURALIZATION APPLICATION

The procedures for processing an application for naturalization are found at 8 C.F.R. 335.1, et. seq. Title 8 C.F.R. § 335.1 requires the CIS to conduct an investigation of the applicant after he or she files an application for naturalization. Title 8 C.F.R. § 335.2 provides in pertinent part:

(a)    General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. The applicant may request the presence of an attorney or representative who has filed an appearance in accordance with part 292 of this chapter.

(b)    Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial

examination on the naturalization application only after the Service [*8] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:

(1)    Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;

(2)    Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or

(3)    Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

## IV.

## ANALYSIS

**A.    THE DEFENDANT'S MOTION MUST FAIL BECAUSE THERE EXISTS A GENUINE ISSUE OF MATERIAL FACT IN THAT DEFENDANTS OWED PLAINTIFF A NON-DISCRETIONARY DUTY TO CONDUCT A NATURALIZATION EXAMINATION**

**1.    Case Law Demonstrates that Courts Have Jurisdiction Under the Mandamus Act and the Administrative Procedure Act Because USCIS and the FBI Owe a Non-Discretionary Duty To Adjudicate the Naturalization Examination and Complete Background Checks Within a Reasonable Period of Time**

In *Moretazpour v. Chertoff*, No. C 07-4264 BZ, 2007 U.S. Dist. LEXIS 92047 (N.D. Ca. Dec. 5, 2007), the USCIS, along with the other defendants, filed a motion to dismiss a mandamus complaint that sought to compel USCIS to adjudicate the plaintiff's naturalization examination and to compel the FBI to complete the background check. USCIS argued that the complaint should be dismissed because plaintiff had no legal right to have his application processed within a reasonable time. Defendants contended that because USCIS did not have the authority to process plaintiff's application until after the FBI conducted a criminal background check, the court could not now order USCIS to complete the naturalization application. Defendants also argued that the FBI did not have a clear, non-discretionary, duty to complete a criminal background check within a particular period of time. The Court denied both arguments.

1    With respect to the nondiscretionary duty owed by FBI, the Court concluded that the FBI

2    "had a mandatory duty to complete its background check within a reasonable time even though that

3    duty is not expressly stated in a statute." The Court stated as follows:

4    "Such a duty must follow from the 1997 funding legislation and the
     implementing regulations which injected the FBI into the naturalization process by
5    requiring that the FBI conduct a full criminal background check of a naturalization
     applicant before the USCIS can complete its adjudication of the application." Citing,
6    Pub.L. 105-119, 111 Stat. 2440, 2448 - 49, Tit. I, Nov. 26, 1997. This requirement is
     codified in 8 C.F.R. 335.2(b). Other regulations require applicants to submit their fees
7    to USCIS, which in turn provides a portion of the fees to the FBI to complete the
     fingerprint and name checks. 8 C.F.R § 334.2; 72 Fed.Reg. 4888, 4889 (proposed
8    Feb. 1, 2007) (proposing increased fees for applicants based, in part, to "costs due to
     the FBI for background checks"). "[W]here   Congress has conditioned CIS's
9    mandatory action on the FBI's completion of background checks, and where
     applicants must pay the FBI, through CIS, to complete the background checks, the
10   Court holds that Congress has, by implication, imposed on the FBI a mandatory duty
     to complete the background checks." *Kaplan v. Chertoff*, 481 F.Supp.2d 370, 401
11   (E.D. Pa.); *see also Al Daraji v. Monica*, 2007 U.S. Dist. LEXIS 76205, 2007 WL
     2994608 at *3 - *5 (E.D. Pa.).

12

13   The Court further reasoned:

14   "to hold otherwise could result in the indefinite suspension of a naturalization
     application adjudication should the FBI fail to complete the requisite criminal
15   background check, which would violate the APA. It would also defeat Congress's
     purpose in requiring the background check. If there is no time frame attached to it, a
16   failure to complete the check would mean that applicants who should be rejected
     because of their criminal background, would be allowed to stay in the U.S. for long
17   periods of time, while applicants who should be approved because they have no
     criminal background, are denied citizenship. citing to *Ahmadi v. Chertoff*, 2007 U.S.
18   Dist. LEXIS 81629, 2007 WL 3022573 at *5 (N.D. Cal.).

19

20   In assessing the nondiscretionary duty of the USCIS, the Court in *Moretazpour v. Chertoff*,

21   *supra*, found that other courts have also held that the UCSIS is the primary agency responsible for

22   processing naturalization applications and that its duty to process a naturalization application is

23   mandatory, *citing* to *Kaplan v. Chertoff*, 481 F. Supp. 2d 370 at 399 (E.D. PA 2007), and once the

24   FBI completes its background check, USCIS has a mandatory duty to complete the adjudication of

     the application. *Id.*

25

26   In *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS, 2008 U.S. Dist. LEXIS 13804, at 19

27   (E.D. Ca. Feb. 25, 2008), the Court found that USCIS had mandatory duty to adjudicate

28   naturalization application within a reasonable time. In *Sidhu, supra*, USCIS filed a motion to

     dismiss contending that relief was unavailable under the APA and Mandamus Act because USCIS

1    had no clear nondiscretionary duty to complete the adjudication of the claimant's application prior

2    to the receipt of her name check results and completion of her interview. USCIS also contended that

3    no statute or regulation gave USCIS a nondiscretionary duty to request expedited background checks

4    or imposed any limitations on the FBI's discretion regarding the timetable for conducting name

5    checks. The Court denied the motion to dismiss.

6        The Court found that it had jurisdiction under the APA over USCIS. The Court reasoned:

7
8        "As the agency responsible for adjudication of naturalization applications, USCIS has
         a mandatory, nondiscretionary duty to fulfill this role. Both the INA and USCIS
         regulations make this duty clear. Specifically, the statute and regulations require that
9        after the filing of a naturalization application, USCIS must conduct a background
         investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. The agency must
10       also conduct an examination of the applicant.8 U.S.C. 1446(b)8 C.F.R. § 335.2(a).
         The examiner "shall make a determination as to whether the application should be
11       granted or denied, with reasons therefor." 8 U.S.C. 1446(d). See also 8 C.F.R.
         316.14(b)(1) ("Subject to supervisory review, the employee of [USCIS] who conducts
12       the examination [on an application for naturalization] shall determine whether to
         grant or deny the application, and shall provide reasons for the determination . . . ."); 8
13       C.F.R. § 335.3(a) (USCIS "shall grant the application if the applicant has complied
         with all requirements for naturalization . . .").

14

15       Because USCIS is required to adjudicate naturalization applications, it must do so in a
         reasonable amount of time. That the INA does not specify a timeframe for action (at
16       least not prior to plaintiff's examination) is immaterial; the APA's requirement of
         action within a reasonable time applies.

17

18       . . .

19
         In sum, "[e]ven though neither the statute nor regulations establish a definitive
20       deadline for scheduling an examination that does not mean that [US]CIS possesses
         'unfettered discretion to relegate aliens to a state of limbo, leaving them to languish
21       there indefinitely.'" quoting, Hanbali v. Chertoff, No. 3:07CV-50-H, 2007 U.S. Dist.
         LEXIS 65742, at *7 (W.D. Ky. Aug. 17, 2007) (internal citation omitted).

22

23       See also, Weiming Jiang, v. Chertoff, No. C 08-00332 SI 2008 Lexis 42640 (N.D. Cal. April

24   28, 2008), Wang v. Mukasey, No. 07-6266, 2008 WL 1767042, (N.D. Cal. April 16, 2008).

25       Conversely, in Dairi v. Chertoff, 07-cv-1014 JM(JMA), 2007 WL 3232503 at *2 (S.D. Cal.

26   Nov. 1, 2007), the district court granted USCIS's motion to dismiss a mandamus complaint to

27   compel USCIS to adjudicate a naturalization application. In Dairi, the Court found that USCIS

28   satisfied its evidentiary burden that Plaintiff's application for naturalization was in the process of

1    adjudication despite a one year delay because the background check was not completed. The Court

2    reasoned as follows:

3            While Defendants have the nondiscretionary duty to adjudicate Plaintiff's application,
         the USCIS, the FBI, and other federal agencies have a great deal of discretion in how
4        they process the Congressionally mandated background investigation. Defendants
         submit the declaration of Janaki Rangaswamy, supervisor of the N-400 unit
5        responsible for overseeing the processing of N-400 applications from the initial
         receipt of the application through the receipt of the FBI name check clearances. Mr.
6        Rangaswamy declares that Plaintiff filed his N-400 application on May 4, 2006 and
         that a request for a background security name check was submitted to the FBI on May
7        17, 2006. He also declares that the FBI name check remains pending and that
         continued monitoring [*5] of Plaintiff's N-400 application reveals that "the FBI query
8        continues to return its current response of 'pending' or 'IP,' [and] this agency's hands
         are tied, and we are unable to move beyond this point." (Rangaswamy Decl. P6; Supp.
9        Decl. P7).

10           Further, there appears to be no legal basis for the court to exercise subject matter
         jurisdiction over the action to compel Defendants to proceed with the naturalization
11       interview. Defendants are precluded from proceeding with an applicant interview
         (generally considered the final step in the naturalization examination process), as
12       requested by Plaintiff, until completion of the FBI background investigation."

13           Several other courts have held that it has jurisdiction to entertain a complaint to compel

14   USCIS to adjudicate an naturalization examination in a timely manner under the Mandamus Act and

15   the APA.

16           For instance, in *Assadzadeh v. Mueller*, No. 07-2676, 2007 U.S. Dist. LEXIS 80915, 13-14

17   (E.D. Pa. Oct. 31, 2007), plaintiff's also brought a cause of action compelling USCIS to decide the

18   naturalization applications in a timely manner.  Defendants filed a motion to dismiss on the grounds

19   that the court lacked jurisdiction, under the APA and Mandamus Act because no statute requires

20   adjudication of the naturalization application within a specified time frame.  In denying the motion

21   to dismiss, the District Court relied upon *Norton v. S. Utah Wilderness Alliance, supra*, to highlight

22   that "'the only agency action that can be compelled under the APA is action legally required.'"  542

23   U.S. at 63  (emphasis added) and the mandamus remedy is confined to enforcement of "'a specific

24   unequivocal command.'" *Id.* at 63. Thus, to invoke the jurisdiction of the district courts, a plaintiff

25   must assert that an agency failed to perform a mandatory duty. *Id.* at 63-64. The Court focused on

26   the point that while CIS has some discretion whether to grant or deny an application for

27   naturalization, it has no discretion on whether to process an application. *Id. citing, Shaat v.*

28   *Klapakis*, No. 06-5625, 2007 U.S. Dist. LEXIS 70338, at 8-9 (E.D. Pa. Sept. 21, 2007) (*citing* 8

     C.F.R. §§ 335.1-335.3(a)).  The district court determined that the FBI also had a mandatory duty to

1   conduct background checks. *Id. citing*, 8 C.F.R. § 335.2(b), and *Kaplan v. Chertoff*, 481 F. Supp. 2d

2   370 at 401 (E.D. PA 2007).  The court found that because defendants had a non-discretionary duty

3   to adjudicate naturalization applications and complete background checks, they must do so in a

4   reasonable amount of time. *Id.  Citing, Kaplan*, 481 F. Supp. 2d at 399, 401.  Reasoning that the

5   Immigration & Nationality Act (hereinafter "INA") does not provide a specified time-frame for

6   doing so is of no import; the APA's rule of reasonable timeliness applies.  *Id. citing*, 5 U.S.C. §

7   555(b) (imposing default rule of reasonable time for performance of agency action).  Thus, the Court

8   concluded that because Defendants had a mandatory duty to process naturalization applications

9   within a reasonable time, it had jurisdiction over the APA and mandamus claims and denied the

10  defendants' motion to dismiss those claims.

11      In *Hanbali v. Chertoff*, No. 3:07cv-50-H, 2007 U.S. Dist. LEXIS 65742, 2007 WL 2407232,

12  2-3 (W.D. Ky. Aug. 17, 2007) the District Court retained jurisdiction under the Mandamus Act as the

13  Court found that plaintiff had a clear and certain claim for adjudication of his application for

14  naturalization, and CIS has a "'nondiscretionary, ministerial' duty to adjudicate Plaintiff's application

15  within a reasonable time.

16          2.    **The Case Law Demonstrates that Courts Have Found a Similar Non-**

17                **Discretionary Duty in Other Immigration Contexts**

18

19      In addition, numerous courts within the Ninth Circuit have found CIS has a statutorily

20  prescribed duty to adjudicate applications within a reasonable time under the APA, although these

21  courts have addressed applications for change in status and not naturalization.

22      In *Gelfer v. Chertoff*, 2007 U.S. Dist. LEXIS 26466, 2007 WL 902382 (N.D.Cal. 2007), the

23  District Court sustained subject matter jurisdiction to review agency inaction on the failure to

24  adjudicate the claimant's application to adjust status (Form I-485).  On January 5, 2005, the claimant

25  submitted an I-485 application to USCIS for adjustment to lawful permanent residence status. On

26  May 2, 2005, the claimant had an interview.  After the interview, USCIS submitted her data to the

27  FBI for a security "name check."   After several inquiries about the status of her case, to no avail,

28  because USCIS only informed her that it was still waiting for security checks back from the FBI and

    was unable to proceed with her case. On October 30, 2006, the claimant filed a complaint asserting

1    jurisdiction under the Mandamus Act and the Administrative Procedure Act in conjunction with 28

2    U.S.C. 1331 requiring, among other things, that USCIS adjudicate her application.

3    USCIS filed a motion to dismiss alleging lack of subject matter jurisdiction under the APA.

4    The Court denied the motion, reasoning that there was a difference between the USCIS's discretion

5    over *how* to resolve an application and the USCIS's discretion over *whether* it resolves an

6    application. Id., quoting, *Singh v. Still*, 470 F. Supp. 2d 1064, 2007 U.S. Dist. LEXIS 16334, 2006

7    WL 3898174, *2 (N.D. Cal. Jan. 8, 2007).

8    The Court further stated as follows:

9

10    "Allowing [USCIS} a limitless amount of time to adjudicate petitioner's application would be contrary to the "reasonable time" frame mandated under 5 U.S.C. 555(b) and, ultimately, could negate the USCIS's duty under 8 C.F.R. 245.2(a)(5). . .

11

12    "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Id. at 934. Here,
13    respondents fail to show that the delay of petitioner's application is reasonable as a matter of law. Simply asserting that the USCIS is awaiting the results of an FBI name
14    check does not explain why petitioner's application has been stagnant for the past two years. See Singh, 2007 U.S. Dist. LEXIS 16334, 2006 WL 3898174 at *3.
15    Respondents do not point to a single action taken during that period of time to further the processing of petitioner's application or a reason why petitioner's application is
16    particularly troublesome. See id. 2007 U.S. Dist. LEXIS 16334, at *4. As in *Yu,* this order does not find respondents' more than two-year delay in the adjudication of
17    petitioner's application reasonable as a matter of law. 36 F. Supp. 2d at 935."

18    In *Aslam v. Mukasey*, 531 F. Supp 736 (E.D. Va. Jan. 25, 2008), although distinguishable in

19    part because the plaintiff was seeking a change in status and not naturalization, the Court's

20    discussion of the delays caused by the name check program was decided on a summary judgment and

21    the Court concluded that it should rule for the plaintiff because under APA principles, USCIS had

22    unreasonably delayed action on the plaintiff's petition for change in status, and that USCIS bore

23    responsibility for the FBI name check program:

24

25    "CIS maintains that completion of the FBI name check is indispensable to a full and fair adjudication of the application. However, CIS has discretion to select its
investigatory methods and it retains the ability to control their pace. *See* Cannon Decl.
26    P 18 (noting-that "USCIS [may] direct[ ] that a name check be handled on an 'expedited basis'"). Because of the unreasonable delay in the processing of Aslam's
27    name check and the government's inability or unwillingness to proffer specific reasons for the delay, the Court finds that CIS must expedite review of this
28    application.

1

2

3

4

5

Accordingly, the Court will grant plaintiff relief to the extent that it will order OS to direct the FBI to expedite its processing of Aslam's name check. If the FBI is unable to complete the name check within 90 days, CIS shall direct the FBI to identify in detail the specific issues that are preventing the completion of the [*47] name check. CIS shall then report those reasons to the Court. If the FBI completes the name check within that time period, CIS shall complete its adjudication of Aslam's application within 60 clays of receiving the FBI's report and file a certification informing the Court of the disposition."

6

*Aslam*, 2008 U.S. Dist. LEXIS 5616, 2008 WL 220708 *9.

7

8

9

10

In *Salehian v. Novak*, No. 06-459, 2006 U.S. Dist. LEXIS 77028, (D. Conn. 2006), the district court found jurisdiction over the mandamus action and held that defendants must provide an explanation for the delay resulting from security checks or adjudicate plaintiffs' Adjustment of Status Applications (Form I-485).

11

12

13

14

15

16

In *Xu v. Chertoff*, No. 07-366, 2007 U.S. Dist. LEXIS 50027 (D.N.J. July 11, 2007), the court found jurisdiction over a mandamus action brought to compel USCIS to adjudicate plaintiffs' Adjustment of Status Application (Form I-485). The court found that the defendants had a non-discretionary duty to process or adjudicate the application and that defendants had not provided a satisfactory explanation for the delay. Plaintiffs' applications had been pending for over two years when they filed their complaint.

17

18

### 3.    This **Court** **Has** **Jurisdiction** **Under** the **Mandamus** **Act**

19

20

21

22

23

In the instant case, Mr. Arreola filed an application for naturalization with USCIS on or about September 6, 2006. Almost two years have passed, and USCIS has still not scheduled Mr. Arreola for an interview on his application for naturalization. USCIS asserts that Mr. Arreola's naturalization interview has not been conducted because the name checks have not been completed by the FBI.[11]

24

25

26

27

This Court can invoke mandamus jurisdiction in this matter. Mr. Arreola's mandamus claim is clear and certain because he is not requesting review of a particular agency decision, and because he has not requested an adjudication of his application without the necessary background checks, instead, he asked that defendants to reach a decision on their applications within a reasonable time.

28

---

[11]    Please refer to pg. 19 of the Affidavit of Janaki Rangaswamy in Defendant's motion.

1  *See Hanbali v. Chertoff*, No. 3:07CV-50-H, 2007 U.S. Dist. LEXIS 65742, at *7 (W.D. Ky. Aug. 17,

2  2007)

3      The USCIS has a mandatory nondiscretionary duty to adjudicate the Plaintiff's application

4  for naturalization within a reasonable time. *Moretazpour v. Chertoff*, No. C 07-4264 BZ, 2007 U.S.

5  Dist. LEXIS 92047, 8-9 (N.D. Ca. Dec. 5, 2007), *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS,

6  2008 U.S. Dist. LEXIS 13804, at 19 (E.D. Ca. Feb. 25, 2008).  The FBI also has a mandatory,

7  nondiscretionary duty to complete background checks within a reasonable time.  Despite the absence

8  of a statute or regulation imposing a specific deadline to process a naturalization examination "that

9  does not mean USCIS and the FBI possess unfettered discretion to relegate aliens to a state of limbo,

10  leaving them to languish there indefinitely. *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS, 2008

11  U.S. Dist. LEXIS 13804, at 19 (E.D. Ca. Feb. 25, 2008), *quoting, Hanbali v. Chertoff*, supra. This

12  same mandatory non-discretionary duty is also imposed upon USCIS and the FBI regarding

13  applications for adjustment of status. *See e.g., Gelfer v. Chertoff*, 2007 U.S. Dist. LEXIS 26466,

14  2007 WL 902382 (N.D.Cal. 2007).

15      Further, there is no adequate alternative remedy available to the Plaintiff.  This is not an

16  instance in which Congress has provided an adequate procedure to obtain judicial review of an

17  agency action.  In such a case, the statutory provision would be the exclusive means of obtaining

18  judicial review in those situations to which it applies, like 8 U.S.C. 1447(b). *See Hanbali v. Chertoff*,

19  No. 3:07CV-50-H, 2007 U.S. Dist. LEXIS 65742, at *7 (W.D. Ky. Aug. 17, 2007) *citing Memphis*

20  *Trust Co. v. Bd. of Governors of Fed. Reserve Serv.*, 584 F.2d 921, 925 (6th Cir. 1978).

21      Thus, the district courts in California and other jurisdictions across the country have invoked

22  jurisdiction under Mandamus Act in cases identical to the Plaintiff's, the Defendants' motion for

23  summary judgment should fail because USCIS and the FBI owe a mandatory nondiscretionary duty

24  to Mr. Arreola.

25

26          **4.    This Court Has Jurisdiction Over Plaintiff's Claim Under the APA**

27      In addition, the Defendant's contend that this Court lacks jurisdiction under the APA.   This

28  District Court has taken the position similar with many other district courts that, taken together, the

APA, and the statues and regulations governing immigration establish a clear and certain right to

1  have applications adjudicated, and to have them adjudicated within a reasonable time frame. *See*

2  *Wang v. Mukasey*, No. 07-6266, 2008 WL 1767042, *3 (N.D. Cal. April 16, 2008) (addressing an N-

3  400 application for naturalization and holding that the court declines to find that the USCIS has no

4  nondiscretionary duty in this case based solely on the fact that the FBI has not completed its

5  background check).

6       The District Courts in the Northern District of California have found that where where

7  defendants unreasonably delay or fail to take action, the Court has jurisdiction to hear plaintiff's

8  complaint under both the writ of mandamus and the APA. *See e.g., Moretazpour v. Chertoff*, No. C

9  07-4264 BZ, 2007 U.S. Dist. LEXIS 92047, 8-9 (N.D. Ca. Dec. 5, 2007) Sidhu v. Chertoff, No.

10  1:07-CV-1188 AWI SMS, 2008 U.S. Dist. LEXIS 13804, at 19 (E.D. Ca. Feb. 25, 2008) *Weiming*

11  *Jiang, v. Chertoff*, No. C 08-00332 SI 2008 Lexis 42640 (N.D. Cal. April 28, 2008).

12       Here, the Plaintiff has waited almost two years for the completion of his naturalization

13  examination, simply because his background check is not completed. Plaintiff is not a criminal and

14  has no criminal history. The fact that Plaintiff has to wait almost two years for the Defendants to

15  perform a nondiscretionary duty is unreasonable. Additionally, as stated, Plaintiff's wife is facing

16  removal from the United States unless her husband can be naturalized.

17

18       Here, Plaintiff alleges in his complaint that defendants have delayed almost two years in

19  adjudicating his N-400 application. Defendants have provided a detailed description of the FBI

20  name-check process in an attempt to explain the delay. The amount of time that is reasonable is a

21  "fact specific inquiry that is premature at the jurisdiction stage." *Sidhu*, 2008 U.S. Dist. LEXIS

22  13804, 2008 WL 540685, at *7; *see also Gelfer*, 2007 U.S. Dist. LEXIS 26466, at *6. Accordingly,

23  where defendants unreasonably delay or fail to take action, the Court has jurisdiction to hear

24  plaintiff's complaint under both the writ of mandamus and the APA.

25       **5.    This Court Has Jurisdiction Under the Declaratory Judgment Act
            Because There is An Independent Ground of Jurisdiction**

26

27       As stated above, this Court has an independent ground of jurisdiction under the Mandamus

28  Act. In addition, this Court has jurisdiction to entertain Plaintiff's complaint under the APA. As

1   such, there exists independent grounds of jurisdiction for this Court to entertain the Plaintiff's

2   declaratory relief.

3   **B.    THE CLAIMS AGAINST DEFENDANTS MUKASEY AND MUELLER
        SHOULD NOT BE DISMISSED**

4

5       The Defendants contend that Defendants Mukasey and Mueller have no role in adjudicating

6   the Plaintiff's application for naturalization, and as a result, the Plaintiff's cause of action should be

7   dismissed against them.  This issue was brought up before this district court in *Weiming Jiang, v.*

8   *Chertoff*, No. C 08-00332 SI 2008 Lexis 42640 (N.D. Cal. April 28, 2008).

9       In *Weiming*, the Court ruled that although immigration adjudications are the domain of the

10  Department of Homeland Security, specific duties may be conferred on other entities. *See* 8 U.S.C. §

11  1103(a)(1)   The Court concluded as follows:

12

13          The Court finds that, reading these regulations and statutes together, there is
            congressional authority for agencies other than DHS to have responsibility for aspects
14          of the immigration application, and the FBI has been given responsibility for
            background checks and therefore has a duty to complete the checks within a
            reasonable time. This finding is consistent with other recent decisions in this district,
15          as well as decisions from other circuits.  *Wang,* 2008 WL 1767042 at *2 ("The Court .
            . . finds that the FBI has a mandatory duty to complete its background check on
16          naturalization applicants in a reasonable time."); *see also Moretazpour v. Chertoff,*
            No. 07-4264, 2007 U.S. Dist. LEXIS 92047, 2007 WL 4287363 (N.D. Cal. Dec. 5,
17          2007); *Kaplan v. Chertoff,* 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007) ("[W]here
            Congress has conditioned CIS's mandatory action on the FBI's completion of
18          background checks, and where applicants must pay the FBI, through CIS, to complete
            the background checks, the Court holds that Congress has, by implication, imposed
19          on the FBI a mandatory duty to complete the background checks.").

20      In addition, dismissing Mukasey and Mueller would allow the government to shift

21  responsibility. As stated in *Weiming, supra,* if the Court were to find, on the merits, "that USCIS was

22  justified in delaying because of an incomplete response from the FBI, then absent jurisdiction over

23  defendant Mueller, plaintiff might have no recourse to compel the government to complete his name

24  check and process his application."  The court was also aware that other courts in this district have

25  dismissed the FBI as a defendant in some immigration application actions, however, those decisions

26  involved 1-485 applications, not N-400 applications, and the FBI's duty "does not arise in cases

27  involving the adjudication of I-485 applications for permanent residency, because the FBI's

28

1  involvement in conducting background checks arises by contract rather than by statute. Therefore,

2  previous decisions to dismiss the FBI are distinguishable." *Wang*, 2008 WL 1767042 at *2.

3      As a result, Defendant's Mukasey and Mueller should not be dismissed from this case.

4  **C.    IF THE COURT HAS SUBJECT MATTER JURISDICTION AGENCY**

5  **ACTION HAS BEEN UNREASONABLY DELAYED**

6      Defendants contend that if this Court has subject matter jurisdiction over this case, the failure

7  to adjudicate the Plaintiff's application within almost a two year period is not unreasonable. The

8  Defendants contend that Plaintiff has failed to establish the existence of an unreasonable delay after

9  applying a six part test under *Telecomm. Research and Action Ctr. v. FCC*, (hereinafter "TRAC")

10 750 F.2d 70, 80 (D.C. Cir. 1984). The cases compelling USCIS and the FBI in this District Court

11 have not required the application of the TRAC six-part test to determine whether APA review is

12 warranted after the agency has failed to act within a reasonable period of time. As stated in *Sidhu*,

13 *supra*, the amount of time that is reasonable is a "fact specific inquiry that is premature at the

14 jurisdiction stage." *Sidhu*, 2008 U.S. Dist. LEXIS 13804, 2008 WL 540685, at *7. Thus, the

15 application of TRAC is not applicable at this time.

16     In the event that the Court finds TRAC applicable, The so-called *TRAC* factors are:

17

18         (1) the time agencies take to make decisions must be governed by a "rule of reason;"
           (2) where Congress has provided a timetable or other indication of the speed with
19         which it expects the agency to proceed in the enabling statute, that statutory scheme
           may supply content for this rule of reason; (3) delays that might be reasonable in the
20         sphere of economic regulation are less tolerable when human health and welfare are at
           stake; (4) the court should consider the effect of expediting delayed action on agency
21         activities of a higher or competing priority; (5) the court should also take into account
           the nature and extent of the interests prejudiced by the delay[;] and (6) the court need
22         not "find any impropriety lurking behind agency lassitude in order to hold that agency
           action is unreasonably delayed." TRAC, 750 F.2d at 80 (citations omitted).

23

24 **1.    Time Agencies Make Decisions Must be Governed by A Rule of Reason**

25     What constitutes an unreasonable delay in the context of immigration applications depends to

26 a great extent on the facts of the particular case. *Gelfer v. Chertoff*, 2007 U.S. Dist. LEXIS 26466,

27 2007 WL 902382 at *2 (N.D.Cal.). Judges in this district have found that, under normal

28 circumstances, a delay of approximately two years due to an uncompleted FBI background check is

unreasonable as a matter of law. *See, e.g., Shaikh v. Gonzales*, 2007 U.S. Dist. LEXIS 88832, 2007

WL 4259410 (N.D. Cal.); Dong, 513 F. Supp. 2d 1158, 2007 WL 2601107 (N.D. Cal.): *Huang v. Chertoff,* 2007 U.S. Dist. LEXIS 48330, 2007 WL 1831105 (N.D.Cal.).

Almost two years have elapsed and the naturalization application has still not been processed and Plaintiff has still not been interviewed by USCIS. This two year wait is an unreasonable period of time for the Plaintiff to wait for his naturalization.

### 2.    No Congressional Timetable

Although there is no statutory timetable for the processing of the naturalization application. There is a 120 day deadline for the adjudication of the naturalization application after the examination. See 8 U.S.C. 1447b. As such, Congress the naturalization process was designed to be adjudicated with some degree of expedience.   Nevertheless, without a statutory time table, a rule of reason mandates that two years is unreasonable.

Defendants' point that they are not statutorily obligated to adhere to any particular time-frame in processing the naturalization application. It is true that the USCIS's discretion to set the procedures by which it adjudicates these applications gives it some flexibility in determining the timing of a decision. However, each adjudication must ultimately be completed within a reasonable amount of time. Otherwise, if the timing was always a matter of discretion beyond the Court's power to intervene would the agencies to avoid judicial review even of adjudications that were postponed indefinitely. See *Shaikh v. Gonzales*, 2007 U.S. Dist. LEXIS 88832, 2007 WL 4259410 (N.D. Cal.).

### 3.    Impact of the Delay to the Plaintiff is Substantial in Compared the National Interest and Thorough Background Checks

Not only has Plaintiff been forced to wait almost two years for the processing of his naturalization application, but his wife is dependent upon the approval of her husband's naturalization application so she can apply to adjust status to a lawful permanent resident before the Immigration Court. Presently, Plaintiff's wife is facing removal proceedings before the Immigration Court and is scheduled to appear on September 9, 2008.  In addition, Plaintiff satisfied good moral character because he has no criminal history or any special circumstances to question his good moral character in the United States.

1    Also, Defendants cannot simply point to a pending FBI background check to establish that

2  any delay in processing a naturalization process. National security interests and the complexity of

3  the background check process can only excuse reasonable delay. Defendants have provided no

4  particularized facts to suggest that these concerns apply with special force to Plaintiff's application or

5  that his name check is otherwise subject to special circumstances. Moreover, the USCIS is not

6  without the power to speed up the adjudication of Plaintiff's application. Indeed, the agency

7  maintains a policy whereby it may request that the FBI expedite a particular name check if certain

8  criteria are met.  *See Shaikh v. Gonzales*,  2007 U.S. Dist. LEXIS 88832, 2007 WL 4259410 (N.D.

9  Cal.).

10              **4.    The Effect of Expedition Would Not Intrude on Agency Discretion and
                       Prejudice Other First in Line Applicants.**

11

12    It appears, the FBI name check is taking unreasonably longer to clear than it would for other

13  similarly situated applicants.  According to USCIS, less than 1 percent of the cases subject to an FBI

14  name check remain pending longer than six months.  CIS Fact Sheet, "Immigration Security Checks-

15  -How and Why the Process Works," (Apr. 25, 2006).  However, delays in processing name checks of

16  more than six months and, in some cases, more than one year, occur, especially since CIS has

17  adopted the position that "[US]CIS will never grant an immigration service or benefit before the

18  required security checks are completed regardless of how long those checks take."  *Id.*  These delays

19  appear to be attributable not only to the need for additional investigation of positive responses but

20  also to errors in formatting or coding name check requests and failure of the CIS Headquarters Office

21  of Field Operations to initiate name checks forwarded by local offices on manual spreadsheets.  *Id.*

22    Mr. Arreola should be entitled to discovery to demonstrate that other applicants who filed

23  applications for naturalization contemporaneous with Mr. Arreola to confirm the allegations of the

24  Defendants that they have not yet had naturalization interviews or name checks completed by the

25  FBI.  Thus, Defendants' own brief demonstrates a reason why a motion to dismiss should not be

26  granted in this matter.

27

28

1

## V.

2

### CONCLUSION

3      Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories,

4  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

5  material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

6  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-

7  moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202

8  (1986). A factual dispute is "material" if it might affect the outcome of the case under governing

9  law. *Id.* at 248.

10      As stated above, there are genuine issues of material fact and the moving party is not entitled

11  to judgment as a matter of law. Therefore, the Court should deny Defendant's motion for summary

12  judgment.

13  Dated:           this 27 day of June 2008

14

15                                          Respectfully Submitted,

16

17                                          /s/
                                          _____

18                                          **REZA ATHARI, ESQ.**
                                          CA Bar No. 186915

19                                          **REZA ATHARI & ASSOCIATES, PLLC**
                                          **A Multi-jurisdictional Law Office**

20                                          3365 Pepper Lane, Suite #102
                                          Las Vegas, NV 89102

21                                          Tel.: (702) 458-8584
                                          Fax: (702) 458-8508

22                                          Attorney for Plaintiff

23

24

25

26

27

28

1  | **REZA ATHARI, ESQ.**
   | CA Bar No. 186915
2  | **REZA ATHARI & ASSOCIATES, PLLC**
   | **A Multi-jurisdictional Law Office**
3  | 3365 Pepper Lane, Suite #102
   | Las Vegas, NV 89102
4  | Tel.: (702) 458-8584
   | Fax: (702) 458-8508
5  | Attorney for Plaintiff

6  | **UNITED STATES DISTRICT COURT**
   | **NORTHERN DISTRICT OF CALIFORNIA**
7  | **SAN JOSE DIVISION**

8

**JORGE ADAN ARREOLA**
9  |                    Plaintiff,              | Case No.  C 08-777 JF

10

11 |          v.

12 | **MICHAEL B. MUKASEY, U.S. ATTORNEY,**   | Date of Hearing:   **July 18, 2008**
   | **GENERAL, et. al.**                     | Time of Hearing:   9:00 a.m.
13 |                    Defendants.           | Courtroom:         3

14

15

16 | **PLAINTIFF'S APPENDIX**

17

18

19

20 | Respectfully Submitted,

21

22 | **REZA ATHARI, ESQ.**
   | CA Bar No. 186915
23 | **REZA ATHARI & ASSOCIATES, PLLC**
   | **A Multi-jurisdictional Law Office**
24 | 3365 Pepper Lane, Suite #102
   | Las Vegas, NV 89102
25 | Tel.: (702) 458-8584
   | Fax: (702) 458-8508
26 | Attorney for Plaintiff

27

28

1

<u>**APPENDIX**</u>

2

<u>PAGE</u>

3

<u>**EXHIBIT 1**</u>

4

A copy of the receipt for the naturalization application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

<u>**EXHIBIT 2**</u>

6

A copy of the visa petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

7

<u>**EXHIBIT 3**</u>

8

A copy of the approval notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9

<u>**EXHIBIT 4**</u>

10

A copy of the Notice of Hearing for Mrs. Ortega . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# THE UNITED STATES OF AMERICA

| Receipt | | | NOTICE DATE September 12, 2006 |
|---|---|---|---|
| CASE TYPE N400   Application For Naturalization | | | USCIS A# A 070 212 570 |
| APPLICATION NUMBER WSC*001583457 | RECEIVED DATE September 05, 2006 | PRIORITY DATE September 05, 2006 | PAGE 1 of 1 |

APPLICANT NAME AND MAILING ADDRESS

JORGE A ARREOLA
c/o REZA ATHARI ESQ
IMMIGRATION LAW OFFICES OF REZA AT
3365 PEPPER LN STE 120
LAS VEGAS NV  89120

**PAYMENT INFORMATION:**

Single Application Fee:      $400.00
Total Amount Received:    $400.00
Total Balance Due:            $0.00

կ.ի.ի.ի.ուիկ.ի.ի.ի.ու

The above application has been received by our office and is in process.  Our records indicate your personal information is as follows:

Date of Birth:            July 17, 1968
Address Where You Live:   448 WOODCOCK CT
                          MILPITAS CA 95035

Please verify your personal information listed above and immediately notify our office at the address or phone number listed below if there are any changes.

You will be notified of the date and place of your interview when you have been scheduled by the local USCIS office.  You should expect to be notified within 365 days of this notice.

If you have any questions or comments regarding this notice or the status of your case, please contact our office at the below address or customer service number. You will be notified separately about any other cases you may have filed.

If you have other questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at **1-800-375-5283**. If you are hearing impaired, please call the NCSC TDD at **1-800-767-1833**.

If you have access to the Internet, you can also visit USCIS at **www.uscis.gov**. Here you can find valuable information about forms and filing instructions, and about general immigration services and benefits. At present, this site does not provide case status information.

**USCIS Office Address:**
U.S. CITIZENSHIP AND IMMIGRATION SERVICES
CALIFORNIA SERVICE CENTER
P.O BOX 10400
LAGUNA NIGUEL CA 92607-

**USCIS Customer Service Number:**
(800) 375-5283

REPRESENTATIVE COPY



WSC$001693762

# EXHIBIT 2

Department of Justice
Immigration and Naturalization Service

OMB #1115-0054
**Petition for Alien Relative**

| DO NOT WRITE IN THIS BLOCK - FOR EXAMINING OFFICE ONLY | | |
|---|---|---|
| A# | Action Stamp | Fee Stamp |

Section of Law/Visa Category
- [ ] 201(b) Spouse - IR-1/CR-1
- [ ] 201(b) Child - IR-2/CR-2
- [ ] 201(b) Parent - IR-5
- [ ] 203(a)(1) Unm. S or D - F1-1
- [ ] 203(a)(2)(A)Spouse - F2-1
- [ ] 203(a)(2)(A) Child - F2-2
- [ ] 203(a)(2)(B) Unm. S or D - F2-4
- [ ] 203(a)(3) Married S or D - F3-1
- [ ] 203(a)(4) Brother/Sister - F4-1

Petition was filed on: _____ (priority date)
- [ ] Personal Interview                [ ] Previously Forwarded
- [ ] Pet.  [ ] Ben. "A" File Reviewed  [ ] I-485 Filed Simultaneously
- [ ] Field Investigation               [ ] 204(g) Resolved
- [ ] 203(a)(2)(A) Resolved             [ ] 203(g) Resolved

Remarks:

**A. Relationship**   You are the petitioner; your relative is the beneficiary.

| 1. I am filing this petition for my: | 2. Are you related by adoption? | 3. Did you gain permanent residence through adoption? |
|---|---|---|
| [X] Husband/Wife  [ ] Parent  [ ] Brother/Sister  [ ] Child | [ ] Yes  [X] No | [ ] Yes  [X] No |

| **B. Information about you** | **C. Information about your relative** |
|---|---|
| 1. Name (Family name in CAPS) (First) (Middle) | 1. Name (Family name in CAPS) (First) (Middle) |
| ARREOLA    Jorge    Adan | ORTEGA    Maria    Magdalena |
| 2. Address (Number and Street) (Apt. No.) | 2. Address (Number and Street) (Apt. No.) |
| 448  Woodcock Court | 448  Woodcock Court |
| (Town or City) (State/Country) (Zip/Postal Code) | (Town or City) (State/Country) (Zip/Postal Code) |
| Milpitas    CA, USA    95035 | Milpitas    CA, USA    95035 |
| 3. Place of Birth (Town or City) (State/Country) | 3. Place of Birth (Town or City) (State/Country) |
| Tijuana    B.C. Mexico | Mexico City    Mexico |
| 4. Date of Birth (Month/Day/Year) 5. Gender 6. Marital Status | 4. Date of Birth (Month/Day/Year) 5. Gender 6. Marital Status |
| 07/17/1968  [X] Male [ ] Female  [X] Married [ ] Single [ ] Widowed [ ] Divorced | 07/22/1971  [ ] Male [X] Female  [X] Married [ ] Single [ ] Widowed [ ] Divorced |
| 7. Other Names Used (including maiden name) | 7. Other Names Used (including maiden name) |
| None | Maria Magdalena Ortega Delgado |
| 8. Date and Place of Present Marriage (if married) | 8. Date and Place of Present Marriage (if married) |
| 08/03/2004; Las Vegas, NV | 08/03/2004, Las Vegas, NV |
| 9. Social Security Number (if any) 10. Alien Registration Number | 9. Social Security Number (if any) 10. Alien Registration Number |
| 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    070 212 570 | 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 |
| 11. Name(s) of Prior Husband(s)/Wive(s) 12. Date(s) Marriage(s) Ended | 11. Name(s) of Prior Husband(s)/Wive(s) 12. Date(s) Marriage(s) Ended |
| Maria M. Ortega    08/17/2001 | Jorge ARREOLA    08/17/2001 |

| 13. If you are a U.S. citizen, complete the following: | 13. Has your relative ever been In the U.S.? [X] Yes [ ] No |
|---|---|
| My citizenship was acquired through (check one): <br> [ ] Birth in the U.S. <br> [ ] Naturalization. Give certificate number and date and place of issuance. <br><br> [ ] Parents. Have you obtained a certificate of citizenship in your own name? <br> [ ] Yes. Give certificate number, date and place of issuance. [ ] No | 14. If your relative is currently In the U.S., complete the following: <br> He or she arrived as a:  Without Inspection <br> (visitor, student, stowaway, without inspection, etc.) <br> Arrival/Departure Record (I-94).    Date arrived (Month/Day/Year) <br> \| \| \| ■ \| \| \| \| \| \| \| <br> Date authorized stay expired, or will expire, as shown on Form I-94 or I-95 |
| 14a. If you are a lawful permanent resident alien, complete the following: Date and place of admission for, or adjustment to, lawful permanent residence and class of admission. <br> 11/13/2001; SF. F-16 | 15. Name and address of present employer (if any) <br> None, , , <br> Date this employment began (Month/Day/Year) |
| 14b. Did you gain permanent resident status through marriage to a United States citizen or lawful permanent resident? <br> [ ] Yes  [X] No | 16. Has your relative ever been under immigration proceedings? <br> [X] No  [ ] Yes Where _____ When _____ <br> [ ] Removal [ ] Exclusion/Deportation [ ] Recission [ ] Judicial Proceedings |

| INITIAL RECEIPT | RESUBMITTED | RELOCATED: Rec'd | Sent | COMPLETED: Appv'd | Denied | Ret'd |
|---|---|---|---|---|---|---|

Form I-130 (Rev. 06/05/02) Y

**Information about your alien relative (continued)**

17. List husband/wife and all children of your relative.

| (Name) | (Relationship) | (Date of Birth) | (Country of Birth) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

18. Address in the United States where your relative intends to live.

| (Street Address) | (Town or City) | (State) |
|---|---|---|
| 448 Woodcock Court | Milpitas | CA, USA |

19. Your relative's address abroad. (Include street, city, province and country)

Phone Number (if any)

| | | |
|---|---|---|
| Tijuana | B.C | Mexico |

20. If your relative's native alphabet is other than Roman letters, write his or her name and foreign address in the native alphabet.
(Name)        Address (Include street, city, province and country):

21. If filing for your husband/wife, give last address at which you lived together. (Include street, city, province, if any, and country):

From:          To:
(Month) (Year)    (Month) (Year)

22. Complete the information below if your relative is in the United States and will apply for adjustment of status.

Your relative is in the United States and will apply for adjustment of status to that of a lawful permanent resident at the office of the Immigration and

and Naturalization Service in _____ If your relative is not eligible for adjustment of status, he or she

(City)          (State)

will apply for a visa abroad at the American consular post in    CD. Juarez          Mexico

(City)          (Country)

NOTE: Designation of an American embassy or consulate outside the country of your relative's last residence does not guarantee acceptance for processing by that post. Acceptance is at the discretion of the designated embassy or consulate.

## D. Other information

1. If separate petitions are also being submitted for other relatives, give names of each and relationship.

None

2. Have you ever filed a petition for this or any other alien before?    ☐ Yes   ☒ No
If "Yes," give name, place and date of filing and result.

WARNING: INS investigates claimed relationships and verifies the validity of documents. INS seeks criminal prosecutions when family relationships are falsified to obtain visas.

PENALTIES: By law, you may be imprisoned for not more than five years or fined $250,000, or both, for entering into a marriage contract for the purpose of evading any provision of the immigration laws. In addition, you may be fined up to $10,000 and imprisoned for up to five years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this petition.

YOUR CERTIFICATION: I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Furthermore, I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit that I am seeking.

## E. Signature of petitioner.

Date  9/23/2004   Phone Number (408) 586-9222

## F. Signature of person preparing this form, if other than the petitioner.

I declare that I prepared this document at the request of the person above and that it is based on all information of which I have any knowledge.

| Print Name | Vilma Coca | Signature | | Date 9/23/04 |
|---|---|---|---|---|

Address    Immigration Law Offices of Reza Athari, 3365    G-28 ID or VOLAG Number, if any. 186915

Pepper Lane, Suite 102, Las Vegas, NV 89120

.

# EXHIBIT 3



# DEPARTMENT OF HOMELAND SECURITY

U.S. Citizenship and Immigration Services
1887 Monterey Road
San Jose, California  95112

## NOTICE OF APPROVAL OF RELATIVE IMMIGRANT VISA PETITION

Name and address of Petitioner

Jorge Adan Arreola
448 Woodcock Court
Milpitas, CA 95035

| NAME OF BENEFICIARY: Maria Magdalena Ortega | |
|---|---|
| CLASSIFICATION FX-6 | FILE NO.: A78 191 271 |
| APPROVAL DATE April 25, 2007 | PRIORITY DATE December 3, 2004 |

Date: April 25, 2007

**The visa petition you filed has been approved. The beneficiary for whom you filed has been given the appropriate classification. Note the approval gives no assurance that the beneficiary will automatically be found eligible for visa issuance, admission to the United States or adjustment to lawful permanent resident status. Whether the beneficiary gets a visa is decided only when an application is made to a consular officer; whether the beneficiary is admitted or adjusts status in the United States is decided only when an application is made to an immigration officer.**

1. ☐ Your petition to classify the beneficiary as an immediate relative of a United States citizen has been forwarded to the United States Consulate at _____. This completes all action by this Service on the petition. The United States Consulate, which is part of the Department of State, will contact the beneficiary and give instructions about getting a visa. Questions about getting a visa should be made to the United States Consulate.

2. ☐ Your petition for preference classification has been forwarded to the Department of State National Visa Center (NVC). The NVC processes all approved immigrant visa petition that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to the consulate.

3. ☐ The petition indicates that the beneficiary is in the United States and will apply for adjustment of status to become a lawful permanent resident. Additional information about eligibility for adjustment of status may be obtained from the local INS office serving the area where the person for whom you are petitioning lives. If the beneficiary decides to apply for an immigrant visa outside the United States based on this petition, the petitioner should file form I-824, Application for Action on an Approved Application or Petition with this office to request that we send the petition to the Department of State National Visa Center (NVC).

4. ☒ Your petition says that the beneficiary is in the United States and will apply to become a lawful permanent resident. The beneficiary may not apply to become a permanent resident, however, until a visa number is available. Information about visa numbers may be obtained from the U.S. Dep. of State, Consul Affairs, Washington, D.C.

6. ☐ Original documents submitted in support of your petition unaccompanied by copies have been made a permanent part of the petition. Any others are being returned with this form. This form is not a visa nor may it be used in place of a visa.

7. ☐ The beneficiary will be informed of the decision made on the pending application to become a Lawful Permanent Resident.

8. ☒ Remarks:  Your approved visa petition will be consolidated into your A78 191 271 file.

Very truly yours,

Cc: Seth L. Reszko, Esq.

Francis D. Siciliano
Field Officer Director

Form I-171



**EXHIBIT**      **4**

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
120 MONTGOMERY ST., SUITE 800
SAN FRANCISCO, CA    94104

RE:  ORTEGA DELGADO, MARIA MAGDALENA
FILE:  A78-191-271

DATE:  Jun 3, 2008

TO:        IMMIGRATION LAW OFFICES OF REZA ATHARI
           RESZKO, SETH L.
           3365 PEPPER LANE, SUITE 102
           LAS VEGAS, NV  89120

Please take notice that the above captioned case has been scheduled for a
MASTER hearing before the Immigration Court on  SEPT 9, 2008   at  1:00 pm  at:

120 MONTGOMERY ST., 9TH FLOOR, COURTROOM 12
SAN FRANCISCO, CA  94104

You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court.  Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative.  If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed.  You can request an
earlier hearing in writing.

Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions:  (1) You may be taken into
custody by the Department of Homeland Security and held for further
action. OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act.  An order of removal will be entered
against you if the Department of Homeland Security established by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.

IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT SAN FRANCISCO, CA  THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

A list of free legal service providers has been given to you.  For
information regarding the status of your case, call toll free 1-800-898-7180
or 703-305-1662.

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)      PERSONAL SERVICE (P)
TO: [ ] ALIEN   [ ] ALIEN c/o Custodial Officer   [ж] ALIEN's ATT/REP   [ ] DHS
DATE: _____      BY: COURT STAFF _____   N3
      Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

1

# **RELEVANT CASES**

2
                                                                                 <u>PAGE</u>

3

4  *Moretazpour v. Chertoff*, No. C 07-4264 BZ, 2007 U.S. Dist. LEXIS 92047, 8-9

5  (N.D. Ca. Dec. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

6  *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS, 2008 U.S. Dist. LEXIS 13804, at 19

7  (E.D. Ca. Feb. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-12

8  *Weiming Jiang, v. Chertoff*, No. C 08-00332 SI 2008 Lexis 42640

9  (N.D. Cal. April 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LexisNexis™  Total Research System

Switch Client ┆ Preferences ┆ Sign Out ┆ [?] Help

My Lexis™ ┆ Search ┆ Research Tasks ┆ Get a Document ┆ Shepard's® ┆ Alerts ┆ Total Litigator ┆ Transactional Advisor ┆ Counsel Selector ┆ Dossier ┆ History ┆ ⟨⟩

Service: **Get by LEXSEE®**
Citation: 2007 U.S. Dist. LEXIS 92047, 8

*2007 U.S. Dist. LEXIS 92047, \**

.SIAMAK MORETAZPOUR, Plaintiff(s), v. MICHAEL CHERTOFF, et al., Defendant(s).

No. C 07-4264 BZ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2007 U.S. Dist. LEXIS 92047

December 5, 2007, Decided
December 5, 2007, Filed

Judge Profile
View a summary by nature of suit of the civil cases heard by this judge, excerpted from the CourtLink Judicial Strategic Profile.

**CORE TERMS:** background check, naturalization, mandatory duty, reasonable time, legally required, agency action, non-discretionary, mandamus, failure to complete, right of recovery, period of time, citizenship, processing, favorable, mandatory, examiner, delayed

**COUNSEL:** [\*1] For Siamak Mortezapour, Plaintiff: Geri Nadine Kahn ▾, LEAD ATTORNEY, Law Office of Geri N. Kahn, San Francisco, CA.

For Michael Chertoff, Secretary, Department of Homeland Security, Emilio T. Gonzalez, Director, United States Citizenship & Immigration Services, Alberto Gonzales, Attorney General, Alfonso Aguilar, Chief, United States Citizenship & Immigration Services, Rosemary Melville, District Director, United States Citizenship & Immigration Services, Robert Mueller, Director of Federal Bureau of Investigation, Defendants: Ila Casy Deiss, LEAD ATTORNEY, United States Attorney's Office, San Francisco, CA.

**JUDGES:** Bernard Zimmerman ▾, United States Magistrate Judge.

**OPINION BY:** Bernard Zimmerman ▾

**OPINION**

**ORDER DENYING MOTION TO DISMISS**

On August 20, 2007, plaintiff filed a complaint seeking an order requiring defendants [1] to expeditiously complete the security check on his application for naturalization; requiring USCIS to process his naturalization application to conclusion; and seeking attorneys fees. [2] The complaint asserts jurisdiction principally under the Mandamus Act, 28 U.S.C. section 1361 [3] and the Administrative Procedures Act, "APA" 5 U.S.C. section 702, *et seq.* [4] These acts essentially provide avenues for [\*2] relief to a plaintiff who has been denied an administrative action which a government defendant is legally required to take.

**FOOTNOTES**

1 Named defendants are Michael Chertoff, Secretary, Department of Homeland Security; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services ("USCIS"); Michael B. Mukasey, Attorney General; Alfonso Aguilar, Chief, USCIS; Rosemary Melville, District Director, USCIS; and Robert Mueller, Director of Federal Bureau of Investigation ("FBI").

2 All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) for all proceedings, including entry of final judgment.

3 A court has jurisdiction, "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is appropriate when a plaintiff has "no alternative [or] adequate remedy" and the defendant owes him a "clear non-discretionary duty." Id.; see Heckler v. Ringer, 466 U.S. 602, 616-17, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984).

4 Under the APA, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action

withing the meaning of a relevant statute, is entitled **[*3]** to judicial review thereof." 5 U.S.C. § 702. The APA requires agencies to act within a "reasonable time" on matters presented to it. 5 U.S.C. § 555(b). Courts have the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the Supreme Court has "limited that authority to compelling ministerial, non-discretionary ministerial-actions the agency is legally *required* to take." Ajmal v. Mueller 2007 U.S. Dist. LEXIS 52046, 2007 WL 2071873 at *2 (E.D. Pa.) *citing* Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004).

Plaintiff, an electrical engineer who is a citizen of Iran, contends that defendants are legally required to process his naturalization application in a reasonable time. His complaint alleges that on July 21, 2006, he filed an application for naturalization which remains pending with the USCIS. Plaintiff is not aware of further action taken toward processing his application since August 15, 2006. When plaintiff inquired regarding the delay in adjudicating his application, USCIS responded that his application was delayed by the background check. He alleges he does not have a criminal record and attached two law enforcement documents which support his **[*4]** allegations. Based on what defendants have told him, he believes that "the FBI name check appears to be the only reason for delay" of his naturalization application. His urgency is due, in part, to his desire to get his wife out of Iran.

Defendants argue that the complaint should be dismissed for failure to state a claim because plaintiff has no legal right to have his application processed within a reasonable time. [5] Defendants contend that because USCIS does not have the authority to process plaintiff's application until after the FBI conducts a criminal background check, this court cannot now order USCIS to complete the naturalization application. Defendants also argue that the FBI does not have a clear, non-discretionary duty to complete a criminal background check within a particular period of time. Both arguments fail.

**FOOTNOTES**

[5] A motion to dismiss under Rule 12(b)(6) should be granted only if plaintiff's complaint fails to set forth facts sufficient to establish a plausible right of recovery. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). For the purposes of a motion to dismiss, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded **[*5]** factual allegations are taken as true. Everest & Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994); see also Mitan v. Feeney, 497 F. Supp. 2d 1113, 2007 WL 2068106 at *9 (C.D. Cal.) (discussing the post-Twombly standard).

Taking the second argument first, I conclude that the FBI has a mandatory duty to complete its background check within a reasonable time even though that duty is not expressly stated in a statute. Such a duty must follow from the 1997 funding legislation and the implementing regulations which injected the FBI into the naturalization process by requiring that the FBI conduct a full criminal background check of a naturalization applicant before the USCIS can complete its adjudication of the application. Pub.L. 105-119, 111 Stat. 2440, 2448 - 49, Tit. I, Nov. 26, 1997. [6] This requirement is codified in 8 C.F.R. § 335.2(b). Other regulations require applicants to submit their fees to USCIS, which in turn provides a portion of the fees to the FBI to complete the fingerprint and name checks. 8 C.F.R § 334.2; 72 Fed.Reg. 4888, 4889 (proposed Feb. 1, 2007) (proposing increased fees for applicants based, in part, to "costs due to the FBI for background checks"). "[W]here **[*6]** Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks." Kaplan v. Chertoff, 481 F.Supp.2d 370, 401 (E.D. Pa.); see also Al Daraji v. Monica, 2007 U.S. Dist. LEXIS 76205, 2007 WL 2994608 at *3 - *5 (E.D. Pa.). [7]

**FOOTNOTES**

[6] "[N]one of the funds appropriated or otherwise made available to the [INS] shall be used to complete adjudication of an application for naturalization unless the [INS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed."

[7] Many of the cases defendants rely on to support their contention that the FBI does not have a duty to complete a background check within a reasonable period of time are inapplicable. They involve applications for I-485 permanent residency, in which the FBI's involvement in conducting the background check arises by contract, not by statute. Liu v. Chertoff, 2007 U.S. Dist. LEXIS 65687, 2007 WL 2435157 at *1 (D. Ore.); Konchitsky v. Chertoff, 2007 U.S. Dist. LEXIS 53998, 2007 WL 2070325 at *1, *6 (N.D. Cal.); Eldeeb v. Chertoff, 2007 U.S. Dist. LEXIS 55000, 2007 WL 2209231 at *1, *21 - *22 (M.D. Fla.); **[*7]** Sozanski v. Chertoff, 2006 U.S. Dist. LEXIS 95989, 2006 WL 4516968 at *1 (N.D. Tex.). To the extent cases such as Shalabi v. Gonzales, 2006 U.S. Dist. LEXIS 77096, 2006 WL 3032413 at *5 (E.D. Mo.) and Antonishin v. Keisler, 2007 U.S. Dist. LEXIS 70063, 2007 WL 2788841 at *6 - *7 (N.D. Ill.) hold that the FBI does not have a mandatory duty to complete a background check, I respectfully disagree with them and they are not binding on me.

To hold otherwise could result in the indefinite suspension of a naturalization application adjudication should the FBI fail to complete the requisite criminal background check, which would violate the APA. It would also defeat Congress's purpose in requiring the background check. If there is no time frame attached to it, a failure to complete the check would mean that applicants who should be rejected because of their criminal background, would be allowed to stay in the U.S. for long periods of time, while applicants who should be approved because they have no criminal background, are denied citizenship. Ahmadi v. Chertoff, 2007 U.S. Dist. LEXIS 81629, 2007 WL 3022573 at *5 (N.D. Cal.) As one court has noted, "it **[*8]** appears clear from a number of Congressional

enactments that Congress has imposed a mandatory duty on the FBI to perform background checks" for naturalization applicants. Kaplan, 481 F.Supp.2d at 400. Accordingly, the motion to dismiss the FBI is **DENIED.**

Turning to the USCIS, numerous courts have held that the UCSIS is the primary agency responsible for processing naturalization applications and that its duty to process a naturalization application is mandatory. [8] See e.g. Kaplan, 481 F.Supp.2d at 399. Once the FBI completes its criminal background investigation, the USCIS has a mandatory duty to complete the adjudication of the application. The complaint alleges that based on what plaintiff has been told, he "believes" and it "appears" that the delay in the adjudication of his naturalization application is because of the FBI's failure to complete the name check. On a motion to dismiss, viewing the facts in light most favorable to plaintiff, it is not clear as a matter of law that he may not have a plausible right of recovery against USCIS. Again, one court has noted that USCIS "simply does not possess unfettered discretion to regulate aliens to a state of limbo, leaving them to languish **[*9]** there indefinitely." Kaplan, 481 F.Supp.2d at 399-400.

## FOOTNOTES

[8] After an individual has filed a naturalization application, Title 8 states that a USCIS service officer shall conduct an examination of the applicant. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(a). The examiner shall determine whether to grant the application. 8 U.S.C. § 1446(d). If the examiner fails to make the determination within 120 days of the examination, the applicant may seek judicial relief. 8 U.S.C. § 1447(b).

Because defendants have a mandatory duty to adjudicate the naturalization application within a reasonable time, including the examination and criminal background check, defendants' motion to dismiss is **DENIED.** Defendants shall answer by **December 21, 2007.**

Dated: December 5, 2007

/s/ Bernard Zimmerman

Bernard Zimmerman

United States Magistrate Judge

Service: **Get by LEXSEE®**
Citation: **2007 U.S. Dist. LEXIS 92047, 8**
View: Full
Date/Time: Thursday, June 26, 2008 - 8:11 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
🅠 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 **LexisNexis**® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LexisNexis® Total Research System

Switch Client | Preferences | Sign Out | [?] Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History | [?]

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 13804**

*2008 U.S. Dist. LEXIS 13804, \**

GURVINDER KAUR SIDHU, Plaintiff, v. MICHAEL CHERTOFF, Secretary Department of Homeland Security, et al., Defendants.

1:07-CV-1188 AWI SMS

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

2008 U.S. Dist. LEXIS 13804

February 25, 2008, Decided
February 25, 2008, Filed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff naturalization applicant filed a complaint for writ of mandamus and preliminary injunctive relief. He sought to compel defendant United States Citizenship and Immigration Services (CIS) to take action on his petition for naturalization. Defendants filed a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**OVERVIEW:** On or about July 11, 2006, the applicant filed an application for naturalization. The complaint alleged that defendants were in violation of the law and regulations, were unlawfully withholding or unreasonably delaying action on the application, and had failed to carry out the adjudicative and administrative functions delegated to them by law with regard to the application. Even liberally construing the allegations in the complaint, the court found that the applicant's allegations did not indicate any attempt to invoke jurisdiction under 8 U.S.C.S. § 1447(b). Rather, the court found that subject matter jurisdiction could have been founded, if at all, pursuant to the Mandamus Act or the Administrative Procedures Act (APA). Because jurisdiction over the action could not have been based on § 1447(b), any claim or cause of action premised on § 1447 had to be dismissed. Defendants' delay in adjudicating the application was a non-discretionary act. Whether a delay was unreasonable was a fact specific inquiry that was premature at the jurisdiction stage.

**OUTCOME:** Defendants' motion to dismiss was denied. Defendants were ordered to file an answer to the complaint within 60 days from the date of service.

**CORE TERMS:** naturalization, agency action, adjudicate, unreasonably delayed, non-discretionary, reasonable time, matter jurisdiction, immigration, interview, mandamus, time period, Mandamus Act, background check, judicial review, unlawfully, duty to act, cause of action, withheld, pace, writ of mandamus, unreasonable delay, statute provides, adjudicating, indefinitely, conjunction, processing, conducting, reviewable, aggrieved, asking

**LEXISNEXIS® HEADNOTES**                                                                ⊟**Hide**

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction 🔍
Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss 🔍
Evidence > Procedural Considerations > Burdens of Proof > Allocation 🔍

*HN1*⊞ Fed. R. Civ. P. 12(b)(1) allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. The plaintiff has the burden to establish that subject matter jurisdiction is proper. This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. Fed. R. Civ. P. 8(a)(1). When a defendant challenges jurisdiction facially, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍

*HN2*⊞ Fed. R. Civ. P. 12(b)(6) allows the court to dismiss a complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. More Like This Headnote

Immigration Law > Naturalization > Administrative Proceedings > Investigation
HN3 The procedures for processing an application for naturalization are found at 8 C.F.R. § 335.1 et seq. 8 C.F.R. § 335.1 requires the United States Citizenship and Immigration Services (CIS) to conduct an investigation of the applicant after he or she files an application for naturalization. More Like This Headnote

Immigration Law > Naturalization > Administrative Proceedings > Investigation
HN4 See 8 C.F.R. § 335.2.

Immigration Law > Naturalization > Administrative Review
Immigration Law > Naturalization > Judicial Review
HN5 See 8 U.S.C.S. § 1447(a)-(b).

Administrative Law > Judicial Review > Reviewability > Jurisdiction & Venue
HN6 Under the Administrative Procedures Act (APA), 5 U.S.C.S. § 706, the court is authorized to compel agency action unlawfully withheld or unreasonably delayed. The APA does not create subject matter jurisdiction by itself. The court, however, has jurisdiction under 28 U.S.C.S. § 1331 over all civil actions arising under the Constitution, laws, or treaties of the United States. Accordingly, the APA in conjunction with 28 U.S.C.S. § 1331, gives the court jurisdiction to compel action from a government agency unlawfully withheld or unreasonably delayed. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Administrative Law > Judicial Review > Reviewability > General Overview
HN7 See 5 U.S.C.S. § 702.

Administrative Law > Judicial Review > Reviewability > Final Order Requirement
HN8 See 5 U.S.C.S. § 704.

Administrative Law > Judicial Review > Reviewability > General Overview
HN9 See 5 U.S.C.S. § 551(13).

Administrative Law > General Overview
HN10 See 5 U.S.C.S. § 555(b)

Administrative Law > Judicial Review > Remedies > Mandamus
Administrative Law > Judicial Review > Reviewability > Jurisdiction & Venue
HN11 The Administrative Procedures Act (APA), authorizes suit by a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute. A plaintiff states a claim for relief under 5 U.S.C.S. § 706(1) when he or she asserts that an agency failed to take a discrete agency action that it is required to take. When an agency fails to act, the APA provides relief in the form of empowering a court to compel agency action unlawfully withheld or unreasonably delayed. A court, however, may only compel action that is legally required. Should an agency not proceed as directed by 5 U.S.C.S. § 555(b), a court may hear a petition for a writ of mandamus compelling an agency to perform an action unlawfully withheld or unreasonably delayed. 5 U.S.C.S. § 706(1). Thus, a plaintiff may invoke subject matter jurisdiction under the APA, if he or she shows that the defendant (1) had a non-discretionary duty to act, and (2) unreasonably delayed in acting on that duty. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Immigration Law > Naturalization > Administrative Proceedings > Applications
HN12 The United States Citizenship and Immigration Services (CIS) has a non-discretionary duty to act on naturalization applications before it by processing them. The duty to act is found at 5 U.S.C.S. § 555(b), which requires agency actions be done within a reasonable time. Inaction involves a non-discretionary act because at some level, the government has a general non-discretionary duty to process the applications in the first instance. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Administrative Law > Judicial Review > Reviewability > General Overview
Immigration Law > Naturalization > Administrative Proceedings > Applications
HN13 Judicial review of unreasonably delayed naturalization applications is permitted because United States Citizenship and Immigration Services (CIS) has a non-discretionary duty to adjudicate an application. While its duty to grant or deny an application is discretionary, CIS simply does not possess unfettered discretion to relegate applicants to a state of limbo, leaving them to languish there indefinitely. More Like This Headnote | *Shepardize: Restrict By Headnote*

Administrative Law > Judicial Review > Reviewability > General Overview
HN14 Congress enacted the Administrative Procedures Act (APA) to allow an aggrieved person access to the federal courts when agency action has been unreasonably delayed when no statute defines the pace of adjudication. There is a strong presumption that Congress intends judicial review of administrative action. More Like This Headnote

Administrative Law > Judicial Review > Standards of Review > General Overview

*HN15* Courts generally apply the so-called TRAC factors in deciding whether to order relief in claims of agency delay brought under the Administrative Procedures Act (APA). The TRAC factors are: (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. More Like This Headnote

Administrative Law > Judicial Review > Remedies > Mandamus 🔍

*HN16* Although the exact interplay between the Mandamus Act and the Administrative Procedures Act (APA) has not been thoroughly examined by the courts, the United States Supreme Court has construed a claim seeking mandamus under the Mandamus and Venue Act of 1962 (MVA), 28 U.S.C.S. § 1361, in essence, as one for relief under 5 U.S.C.S. § 706 of the APA. If the relief sought is essentially the same as the APA, the court can analyze the issues under the APA. More Like This Headnote | Shepardize: Restrict By Headnote

**COUNSEL:** [*1] For Gurvinder Kaur Sidhu, Plaintiff: Jim A. Trevino, LEAD ATTORNEY, P. Grossman APLC, Fresno, CA.

For Michael Chertoff, Scretary of the Dept. of Homeland Security, Emilio Gonzalez, Director of Citizenship & Immigration Services, Donald Neufeld, Center Director of the CA Services Center of the CIS, David Still, District Director of Citizenship Immigration Services, Regional Officer Donald Riding, Officer in Charge of the Fresno Office of Citizenship Immigration Services, Defendants: Audrey Benison Hemesath, LEAD ATTORNEY, United States Attorney's Office, Sacramento, CA; Ada E Bosque, United States Department of Justice, Washington, DC.

**JUDGES:** Anthony W. Ishii ▾, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Anthony W. Ishii ▾

 **OPINION**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

**(Documents # 15 & # 18)**

**BACKGROUND**

On August 10, 2007, Plaintiff filed a complaint for writ of mandamus and preliminary injunctive relief. Petitioner seeks to compel the United States Citizenship and Immigration Services ("CIS") to take action on his petition for naturalization (Form N-400). The first cause of action requests a writ of mandamus ordering CIS to adjudicate Plaintiff's application for naturalization. The second cause of action [*2] requests an injunction compelling Defendants to complete processing of Plaintiff's application for naturalization because Defendants have effectively denied Plaintiff the opportunity to become a citizen of the United States. The third cause of action alleges that CIS's failure to proceed with Plaintiff's application for naturalization in any manner is arbitrary and capricious in violation of the Administrative Procedures Act, 5 U.S.C. §701, et seq. ("APA").

On October 11, 2007, Defendants filed a motion to dismiss for lack of jurisdiction, which was re-noticed on November 9, 2007. Defendants contend that neither the APA nor mandamus relief provide this court with jurisdiction. Defendants contend that 8 U.S.C. § 1447(b) provides the court with a specific jurisdictional grant and Plaintiff should not be allowed to circumvent the limitations of 8 U.S.C. § 1447(b) by means of the APA or mandamus. Defendants contend that Plaintiff has no clear indisputable right to have his interview prior to the completion of his background check, and as such, mandamus relief is not available. Defendants contend that any delays in rendering a decision on an application can be considered unlawful or unreasonable [*3] under the APA because CIS is not required to render a decision within a certain time and the requirement that actions be taken within a reasonable time would require the court to set an arbitrary deadline because no statute provides guidance for what a reasonable time would be.

On November 9, 2007, Plaintiff filed an opposition. Plaintiff contends that Defendants have a duty to adjudicate Plaintiff's application. Plaintiff points out that she is not asking the court to deny or grant her application. Rather, Plaintiff asks the court to compel Defendants to process her case to conclusion. Plaintiff also contends that under the APA, Defendants must act within a reasonable time and the APA permits the court to compel an agency action that is unreasonably delayed.

**LEGAL STANDARD**

*HN17* Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is [*4] proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct.

1673, 128 L. Ed. 2d 391 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); Fed. R. Civ. P. 8(a)(1). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v. Sullivan, 719 F. Supp. 899, 903 (E.D. Cal.1989), rev'd on other grounds, 963 F. 2d 229 (9th Cir.1992). A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings. Mortensen, 549 F. 2d at 891. Here, Defendants have not provided any evidence with their motion. Thus, the court assumes that Defendants contend this court lacks jurisdiction based on the pleadings.

Defendants also bring this motion pursuant to **[*5]** Rule 12(b)(6) of the Federal Rules of Civil Procedure. HN2Rule 12(b)(6) allows the court to dismiss a complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). Because the basis of Defendants' motion to dismiss is this court's lack of subject matter jurisdiction rather than Plaintiff's failure to state a claim, the court will focus its inquiry under Rule 12(b)(1).

## ALLEGED FACTS

The complaint alleges that on or about July 11, 2006, Plaintiff filed an application for naturalization (Form N-400) with Defendants. The complaint alleges that as part of reviewing the application for naturalization, Defendants are required to conduct a background check and interview Plaintiff. The complaint alleges **[*6]** that following the receipt of Plaintiff's N-400 application, CIS did not notice an interview. The complaint alleges that throughout 2007, Plaintiff has made several inquiries with Defendants as to the status of her application and Defendants responded to the effect that the application was waiting either some kind of "security clearance" or some kind of "name check" from the Federal Bureau of Investigation ("FBI"). The complaint alleges that Defendants have never indicated when such FBI checks might be completed and the N-400 application finally adjudicated. The complaint alleges that Plaintiff is informed and believes that the required "checks" have been pending for over one year and that Defendants have been doing nothing to move the application toward a final decision. The complaint alleges that Plaintiff has exhausted all her administrative remedies.

The complaint alleges that Defendants' refusal to act in this case is, as a matter of law, arbitrary and not in accordance with the law and regulations. The complaint alleges that Defendants are in violation of the law and regulations, are unlawfully withholding or unreasonably delaying action on Plaintiff's application, and have failed **[*7]** to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiff's application.

## DISCUSSION

### A. Naturalization Proceedings

HN3The procedures for processing an application for naturalization are found at 8 C.F.R. § 335.1, et. seq. Title 8 C.F.R. § 335.1 requires the CIS to conduct an investigation of the applicant after he or she files an application for naturalization. Title 8 C.F.R. § 335.2 provides in pertinent part:

HN4(a) General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. The applicant may request the presence of an attorney or representative who has filed an appearance in accordance with part 292 of this chapter.

(b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service **[*8]** has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:

(1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;

(2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or

(3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

[Procedures for conducting an examination] . . . .

8 C.F.R. § 335.2.

**B. SECTION 1447**

Defendants contend that this court lacks jurisdiction pursuant to 8 U.S.C. § 1447(b). Section 1447 concerns the remedies available when an applicant is unsatisfied with the CIS's response to a application for naturalization. Section 1447 provides in part:

> *HN5*(a) Request for hearing before immigration officer

> > If, after an examination under section 1446 of this title, an application **[*9]** for naturalization is denied, the applicant may request a hearing before an immigration officer.

> (b) Request for hearing before district court

> > If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C.A. § 1447(a)-(b).

Plaintiff contends that Defendants have unreasonably delayed in adjudicating Plaintiff's application. Plaintiff does not ask the court to adjudicate her application. Plaintiff also does not refer to the expiration of the 120-day time period or anything else that could reasonably be construed as an attempt to invoke jurisdiction under Section 1447(b). Even liberally construing the allegations in the complaint, the court finds that Plaintiff's allegations do not indicate any attempt to invoke jurisdiction under Section 1447(b). Rather, **[*10]** the court finds that subject matter jurisdiction may be founded, if at all, pursuant to the Mandamus Act or the APA. Because jurisdiction over this action cannot be based on Section 1447(b), any claim or cause of action premised on Section 1447 must be dismissed.

**C. APA**

*HN6*Under the Administrative Procedures Act, 5 U.S.C. § 706, the court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." The APA does not create subject matter jurisdiction by itself. The court, however, has jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, the APA in conjunction with 28 U.S.C. § 1331, gives the court jurisdiction to compel agency action from a government agency unlawfully withheld or unreasonably delayed. Idaho Watersheds Project v. Hahn, 307 F.3d 815, 830 (9th Cir. 2002).

Defendants contend that the court lacks jurisdiction to hear Plaintiff's claim under the APA because Plaintiff cannot establish that Defendants have a clear and non-discretionary duty to adjudicate Plaintiff's N-400 application within a certain time period. Plaintiff contends that Defendants are required to adjudicate **[*11]** pending applications within a reasonable time.

The APA provides for judicial review of agency action or inaction:

> *HN7*A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C.A. § 702. The APA also delineates which actions are reviewable:

> *HN8*Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or **[*12]** not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. The APA states that *HN9*"'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Finally, the APA provides that:

[HN10] With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.

5 U.S.C.A. § 555(b)

In Norton v. South Utah Wilderness Alliance, 542 U.S. 55, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004), the Supreme Court held that [HN11] the APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." Id. at 61. The Supreme Court found that a plaintiff states a claim for relief under Section 706(1) when he or she "asserts that an agency failed to take a discrete agency action that it is required to take." Id. 64. When [*13] an agency fails to act, the APA provides relief in the form of empowering a court to compel agency action unlawfully withheld or unreasonably delayed. Id. at 62. [1] Should an agency not proceed as directed by 5 U.S.C. § 555(b), a court may hear a petition for a writ of mandamus compelling an agency to perform an "action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Thus, a plaintiff may invoke subject matter jurisdiction under the APA, if he or she shows that the defendant (1) had a non-discretionary duty to act, and (2) unreasonably delayed in acting on that duty. Norton, 542 U.S. at 63-65.

---

**FOOTNOTES**

1 A court, however, may only compel action that is legally required. Norton, 542 U.S. at 63.

---

### 1. Non-discretionary Duty to Act

The court agrees with other District Court Judges in the Eastern District of California and finds that [HN12] CIS has a non-discretionary duty to act on applications before it by processing them. See Houle v. Riding, 2008 U.S. Dist. LEXIS 8482, 2008 WL 223670, at *8 (E.D.Cal. 2008); Liu v. Chertoff, 2007 U.S. Dist. LEXIS 50173, 2007 WL 2023548, at *4 (E.D.Cal. 2007). The duty to act is found at Section 555(b), which requires agency actions be done within a reasonable time. See, e.g., Sherdil v. Chertoff, 2007 U.S. Dist. LEXIS 95551, 2007 WL 4564111, at *2 (D.Ariz. 2007); [*14] Sun v. Gonzales, 2007 U.S. Dist. LEXIS 84459, 2007 WL 3548280, at *5 (E.D.Wash. 2007); Saleem v. Keisler, 520 F.Supp.2d 1048, 1055 (W.D.Wis. 2007); Tang v. Chertoff, 493 F.Supp.2d 148, 154 (D.Mass. 2007); Han Cao v. Upchurch, 496 F.Supp.2d 569, 575 (E.D.Pa. 2007); Saleh v. Ridge, 367 F.Supp.2d 508, 511-12 (S.D.N.Y.2005); Duan v. Zamberry, 2007 U.S. Dist. LEXIS 12697, 2007 WL 626116, at *4 (W.D.Pa. 2007). [2] The Ninth Circuit has confirmed that inaction involves a non-discretionary act because "at some level, the government has a general non-discretionary duty to process the applications in the first instance." Indep. Mining Co., Inc. v. Babbitt, 105 F.3d 502, 507 n.6 (9th Cir. 1997). Thus, Defendants' delay in adjudicating Plaintiff's application is a non-discretionary act.

---

**FOOTNOTES**

2 This view is supported by several courts around the country that have concluded that the court has jurisdiction under the Mandamus Act and/or APA because CIS has a non-discretionary, ministerial duty to adjudicate naturalization applications within a reasonable time. See, e.g., Hanbali v. Chertoff, 2007 U.S. Dist. LEXIS 65742, 2007 WL 2407232 (W.D.Ky. 2007) Bodomov v. United States, 2007 U.S. Dist. LEXIS 91852, 2007 WL 4373052 (E.D.Pa. 2007); Mocanu v. Mueller, 2007 U.S. Dist. LEXIS 74562, 2007 WL 2916192 (E.D.Pa. 2007); Shaat v. Klapakis, 2007 U.S. Dist. LEXIS 70338, 2007 WL 2768859 (E.D.Pa. 2007); [*15] Ajmal v. Mueller, 2007 U.S. Dist. LEXIS 52046, 2007 WL 2071873 (E.D.Pa. 2007); Song v. Klapakas, 2007 U.S. Dist. LEXIS 27203, 2007 WL 1101283 (E.D.Pa. 2007); Kaplan v. Chertoff, 481 F.Supp.2d 370, 399 (E.D.Pa.2007). In addition, numerous courts within the Ninth Circuit have found CIS has a statutorily prescribed duty to adjudicate applications within a reasonable time under the APA, although these courts have addressed applications for change in status and not naturalization. See, e.g., Singh v. Still, 470 F.Supp.2d 1064, 1065 (N.D.Cal. 2007) (I-485 application); Gelfer v. Chertoff, 2007 U.S. Dist. LEXIS 26466, 2007 WL 902382 (N.D.Cal. 2007) (I-485 application); Lazli v. U.S. Citizenship and Immigration Services, 2007 U.S. Dist. LEXIS 10713, 2007 WL 496351 (D.Or. 2007) (I-751 petition); Wang v. Gonzalez, 2007 WL 4463009 (N.D.Cal. 2007) (I-485 application); Starodoubtsev v. Mukasey, 2007 U.S. Dist. LEXIS 85634, 2007 WL 4166151 (W.D. Wash. 2007) (I-485 application); Sun v. Gonzales, 2007 U.S. Dist. LEXIS 84459, 2007 WL 3548280 (E.D.Wash. 2007) (I-485 application); Chen v. Heinauer, 2007 U.S. Dist. LEXIS 68867, 2007 WL 2743390 (W.D.Wash. 2007) (I-485 application for adjustment of status); Xin Liu v. Chertoff, 2007 U.S. Dist. LEXIS 61772, 2007 WL 2433337 (E.D.Cal. 2007) (I-485 applications); Abbasfar v. Chertoff, 2007 U.S. Dist. LEXIS 65050, 2007 WL 2409538 (N.D.Cal. 2007) (I-485 application); Liu v. Chertoff, 2007 U.S. Dist. LEXIS 50173, 2007 WL 2023548 (E.D.Cal. 2007) [*16] (I-485 application); Wu v. Chertoff, et al., 2007 U.S. Dist. LEXIS 33816, 2007 WL 1223858 (N.D.Cal. 2007).

---

The court recognizes that not all courts have found jurisdiction to review the pace at which CIS processes applications. These courts have focused on the fact that CIS is not required to process a naturalization applications or conduct interviews within a certain time period, the fact that CIS is prohibited from conducting an examination before the background check is complete, and the fact there is no authority compelling the FBI to complete the name check within a specified time period. Absent specific immigration statutes governing the time period for these events to take place, these courts have found the claims cannot arise under the APA or Mandamus Act. These courts have found CIS has no duty to adjudicate a naturalization application within a particular time frame. Wang v. Gonzales, 2008 U.S. Dist. LEXIS 303, 2008 WL 45492 (D.Kan. 2008); Omar v. Mueller, 501 F.Supp.2d 636, 640 (D.N.J. 2007); Ibrahim v. Chertoff, -- F.Supp.2nd --, 2007 U.S. Dist. LEXIS 95036, 2007 WL 4592246 (E.D.N.C. 2007); Sinha v. Upchurch, 2007 U.S. Dist. LEXIS 90286, 2007 WL 4322225 (N.D.Ohio 2007);. Dairi v. Chertoff, 2007 U.S. Dist. LEXIS 80987, 2007 WL 3232503 (S.D.Cal. 2007); Alhamedi v. United States AG, 2007 U.S. Dist. LEXIS 39601, 2007 WL 1573935 (S.D.N.Y. 2007). These

**[\*17]** courts have concluded that the manner in which a background investigation is conducted is the type of discretionary function not properly the subject of a mandamus action. Dairi v. Chertoff, 2007 U.S. Dist. LEXIS 80987, 2007 WL 3232503 (S.D.Cal. 2007).

These cases, and those cited by Defendants [3], for the proposition that the APA does not 3 provide for jurisdiction do not convince this court that it lacks jurisdiction. For example, in Yarovitskiy v. Hansen, 2007 U.S. Dist. LEXIS 57734, 2007 WL 2301172 (N.D. Ohio 2007), the plaintiff asked the district court to assume jurisdiction over his application for naturalization, to review de novo his application and grant his application for naturalization or, in the alternative, order Defendants to promptly adjudicate the application. The court found no jurisdiction because neither the APA or mandamus relief is available if Congress has provided an adequate procedure to obtain judicial review of an agency action. 2007 U.S. Dist. LEXIS 57734 [WL] at \*4. The court found that because specific statutory provisions allowed for review of both naturalization denials and delays after the interview, the plaintiff could not circumvent the limitations of Section 1447(b) by means of a more general grant of jurisdiction. Id.

---

**FOOTNOTES**

3 Defendants also **[\*18]** cite to Duri v. Hansen, 2007 U.S. Dist. LEXIS 74341, 2007 WL 2908823 (N.D. Ohio 2007). This opinion was withdrawn and superceded. Regardless, the issue in Duri was the breath of the examination referred to in 8 U.S.C. § 1447(b). Duri, 2007 U.S. Dist. LEXIS 77942, 2007 WL 3125303, at \*3. Here, Plaintiff is not contending that the 120 days to adjudicate his application has begun because his examination has been completed.

---

Here, unlike the plaintiff in Yarovistskiy, Plaintiff is not asking the court to adjudicate her application. More importantly, while a specific immigration statute does grant review of delays after an interview, no immigration statute provides for review of delays prior to the interview. In this court's opinion, Yarovistskiy, and related cases, do not adequately explain why the APA would not apply prior to the interview because the specific immigrations statutes at issue do not address delays prior to the interview.

In Omar v. Mueller, 501 F.Supp.2d 636 (D.N.J. 2007), the plaintiff filed an application for naturalization, and asserted the court had jurisdiction to compel the Defendants to act on his naturalization application pursuant to the mandamus statute and APA. Id. at 638. As to mandamus jurisdiction, the court found no **[\*19]** jurisdiction because there was no statutory or regulatory time period in which CIS must act on an application. Id. at 639-40. Concerning the APA, the court found that because CIS is not required to process a naturalization application within a certain time period, there is no discrete agency action to review. Id. at 640.

The court respectfully disagrees with the reasoning of Omar and related cases. While the court agrees that no immigration statute addresses the pace at which applications are processed, the court believes these courts fail to adequately consider the impact of 5 U.S.C. § 555(b)'s mandate that all agency actions not be unreasonably delayed. This court finds that the better rule permits [HN13] judicial review of unreasonably delayed applications because CIS has a non-discretionary duty to adjudicate an application. Without APA relief, CIS could withhold a decision indefinitely in contravention of its statutory duty to process these applications. See Okunev v. Chertoff, 2007 U.S. Dist. LEXIS 53161, 2007 WL 2023553, at \*2 (N.D.Cal. 2007). While its duty to grant or deny an application is discretionary, CIS simply does not possess unfettered discretion to relegate applicants to a state of "limbo, leaving them **[\*20]** to languish there indefinitely." Kaplan, 481 F.Supp.2d at 399. [4] As stated by the Western District of Wisconsin:

> If defendants have an obligation to decide applications but have unfettered discretion to put off deciding an application for as long as they want, how could the duty to decide ever be judicially enforced? Under defendants' view, the answer to that question would be never, except perhaps if they expressly refused to make a decision. So long as defendants say that they are still reviewing the application (or even if they say nothing at all), an applicant must continue to wait indefinitely, no matter how long the delay has been. Such discretion would strip defendants' duty of any meaning . . . .

Saleem v. Keisler, 520 F.Supp.2d 1048, 1055 (W.D.Wis. 2007). Thus, Defendants have a nondiscretionary duty to process Plaintiff's application

---

**FOOTNOTES**

4 The court notes that the government has conceded in other actions concerning adjustment of status that there is a duty to adjudicate applications. See Singh v. Still, 470 F.Supp.2d 1064, 1067 (N.D.Cal.2007); Gelfer v. Chertoff, 2007 U.S. Dist. LEXIS 26466, 2007 WL 902382, at \*2 (N.D.Cal.2007).

---

### 2. Unreasonable Delay

Defendants next argue that even if they have a non-discretionary **[\*21]** duty to act, Plaintiff cannot show an unreasonable delay. Defendants argue that Plaintiff is asking the court to arbitrarily set a deadline where none is provided by statute.

The fact no immigration statute provides the pace of adjudication is not dispositive. The APA itself provides the appropriate standard of review ("unreasonable delay"). [HN14] "Congress enacted the APA to allow an aggrieved person access to the federal courts when agency action has been unreasonably delayed when, as here, no statute defines the pace of adjudication." Houle v. Riding, 2008 U.S. Dist. LEXIS 8482, 2008 WL 223670, \*5 (E.D.Cal. 2008). There is a "strong presumption that Congress intends judicial review of administrative action." Helgeson v. BIA, DOI, United States, 153 F.3d 1000, 1003 (9th Cir.1998). Defendants cite no authority for the proposition that the reasonableness standard found in the APA is so broad as to provide no guidance to actions taken by CIS. To the

contrary, case law provides some guidance. *HN15* "[C]ourts generally apply the so-called TRAC factors in deciding whether to order relief in claims of agency delay brought under the APA" Independence Min. Co., Inc., Babbitt, 105 F.3d 502, 507 (9th Cir. 1997). The TRAC factors  **[*22]** are:

(1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001); Independence Min. Co., 105 F.3d at 507 n.7; Telecommunications Research & Action v. F.C.C., 242 U.S. App. D.C. 222, 750 F.2d 70, 79-80 (D.C.Cir. 1984). Thus, the court finds that there are meaningful standards for the court to determine whether the delay is reasonable. **5**

**FOOTNOTES**

**5** The court is not finding the delay in this case unreasonable. The court  **[*23]** only finds that for the purposes of jurisdiction, there are standards to determine if the delay has been reasonable.

While not specifically argued by Defendants, the court notes that some courts have taken a hybrid approach to jurisdiction. While finding no jurisdiction because there is no requirement that CIS act immediately or promptly when adjudicating applications, some courts go on to review the facts and find that the delay in the particular case at hand is not per se unreasonable. See, e.g., Vorontsova v. Chertoff, 2007 U.S. Dist. LEXIS 81522, 2007 WL 3238026, at *3 (D.Mass. 2007); Dairi v. Chertoff, 2007 U.S. Dist. LEXIS 80987, 2007 WL 3232503, at *2 (S.D. Cal. 2007). In these cases, the courts appear to find that if the delay has been sufficiently unreasonable, jurisdiction is present. The court disagrees with this approach. Once the court determines the facts are not patently frivolous, reviewing the facts to determine if a delay is unreasonable goes to the merits of the case, not whether the court maintains jurisdiction. See Houle v. Riding, 2008 U.S. Dist. LEXIS 8482, 2008 WL 223670, at *7 (E.D.Cal. 2008). The conclusion that one of the factors necessary to obtain relief under APA is missing will result in the court denying the plaintiff's petition, "not  **[*24]** because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief." Ahmed v. Department of Homeland Security, 328 F.3d 383, 387 (7th Cir. 2003) (discussing jurisdiction under the Mandamus Act.) Whether a delay is unreasonable is a fact specific inquiry that is premature at the jurisdiction stage. He v. Chertoff, 2008 U.S. Dist. LEXIS 628, 2008 WL 36634, at *4 (N.D.Ill. 2008).

### 3. Conclusion

Pursuant to the APA, in conjunction with the federal question statute, the court has jurisdiction to review Plaintiff's contention that her application has not been adjudicated within a reasonable time. Accordingly, the Court has subject matter jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b).

### D. MANDAMUS

Defendants contend that Plaintiff's claim under the Mandamus Act fails because Plaintiff cannot establish that Defendants have a clear and non-discretionary duty to adjudicate Plaintiff's N-400 application within a certain time period. The Ninth Circuit has found that *HN16* although the exact interplay between the Mandamus Act and the APA has not been thoroughly  **[*25]** examined by the courts, "the Supreme Court has construed a claim seeking mandamus under the MVA, in essence, as one for relief under § 706 of the APA." Independence Min. Co., 105 F.3d at 507 (citing Japan Whaling Ass'n v. American Cetacean Soc'y, 478 U.S. 221, 230 n. 4., 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986)). If the relief sought is essentially the same as the APA, the court can analyze the issues under the APA. See Independence Min. Co., 105 F.3d at 507.

The APA provides a requirement that Defendants process Plaintiff's application within a reasonable time. Thus, jurisdiction is also appropriate under the Mandamus Act.

### ORDER

Accordingly, based on the above memorandum opinion, the court ORDERS that:

1. Defendants' motion to dismiss is DENIED; and

2. Defendants SHALL file an answer to Plaintiffs' complaint within sixty (60) days from this order's date of service.

IT IS SO ORDERED.

**Dated: February 25, 2008**

**/s/ Anthony W. Ishii**

*UNITED STATES DISTRICT JUDGE*

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 13804**
View: Full
Date/Time: Friday, June 27, 2008 - 7:05 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



**LexisNexis®** About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LexisNexis™ *Total Research System*

Switch Client ¦ Preferences ¦ Sign Out ¦ ? Help

*My Lexis*™ ¦ Search ¦ Research Tasks ¦ Get a Document ¦ Shepard's® ¦ Alerts ¦ Total Litigator ¦ Transactional Advisor ¦ Counsel Selector ¦ Dossier ¦ History ¦ 🔍

Source: My Sources > Federal Legal - U.S. > **Federal & State Cases, Combined** ⓘ
Terms: sidhu and mandamus (Edit Search | Suggest Terms for My Search)

☛ Select for FOCUS™ or Delivery
☐

*2008 U.S. Dist. LEXIS 42640, **

WEIMING JIANG, Plaintiff, v. MICHAEL CHERTOFF, et al., Defendants.

No. C 08-00332 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2008 U.S. Dist. LEXIS 42640

April 28, 2008, Decided
April 28, 2008, Filed

**CORE TERMS:** background check, immigration, reasonable time, writ of mandamus, duty to act, naturalization, citizenship, matter jurisdiction, agency action, nondiscretionary, unreasonably, processing, delayed, frame, Appropriations Act, Mandamus Act, failure to act, oral argument, subject matter, cause shown, material allegations, government employee, recent decisions, mandatory duty, non-discretionary, jurisdictional, inappropriate, additionally, adjudicating, withholding

**COUNSEL:** **[*1]** For Weiming Jiang, Plaintiff: Justin X. Wang ▾, LEAD ATTORNEY, Baughman & Wang, San Francisco, CA.

For Michael Chertoff, Secretary of the Department of Homeland Security, Robert S. Mueller, Director of Federal Bureau of Investigation, Defendants: Melanie Lea Proctor, LEAD ATTORNEY, United States Attorney's Office Civil Division, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON ▾, United States District Judge.

**OPINION BY:** SUSAN ILLSTON ▾

**OPINION**

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

On April 25, 2008, the Court heard oral argument on defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Having considered the papers submitted, and for good cause shown, the Court DENIES defendants' motion.

**BACKGROUND**

Plaintiff Weiming Jiang is a U.S. Permanent Resident. Compl. at 1. On June 27, 2006, he filed an N-400 Application for Naturalization in order to become a U.S. Citizen. *Id.* Plaintiff's application is still pending, and U.S. Citizenship and Immigration Services ("USCIS") has not yet scheduled plaintiff for an interview. *See* Decl. of Janaki Rangaswamy ("Rangaswamy Decl.") at 5.

In order to process an N-400 application USCIS is required to solicit **[*2]** a background check on applicants from the Federal Bureau of Investigation ("FBI"). *See* 8 C.F.R. § 335.2(b); *see also* 8 U.S.C. § 1446(a) (requiring a background check generally); *and* 1998 Appropriations Act, Pub. L. 105-119, 111 Stat. 2440, 2448-49 (withholding funds unless an FBI background check is completed). Plaintiff's application with USCIS is still pending because the FBI has not yet completed plaintiff's "name check," which is customarily a part of the background check USCIS solicits from the FBI. *See* Rangaswamy Decl. at 5.

Plaintiff alleges that the delay in processing his N-400 application has caused him damage and seeks relief from the Court under the **Mandamus** Act, 28 U.S.C. § 1361, the Administrative Procedure Act(APA), 5 U.S.C. § 701 *et seq.,* and the Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq.* Compl. at 2-3. Plaintiff requests that the Court require defendants to act expeditiously on his application. *Id.* at 3. Defendants now move to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject **[*3]** matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,* 376-78, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corps.,* 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to plaintiff. *See NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). However, when the challenge is factual, a court may resolve disputes in determining the existence of jurisdiction (without converting the motion to one for summary judgment). *See Trentacosta v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir. 1987) (*citing Thornhill Publ'g,* 594 F.2d at 733). This practice is limited to purely jurisdictional issues, and when the **[*4]** issue extends into the merits of the case, the court is again limited to taking the complaint's material allegations at face value. *See id.*

## DISCUSSION

Defendants claim this Court lacks subject matter jurisdiction under either a writ of **mandamus** or the APA, contending that neither statute imposes a duty on defendants. In the alternative, if a duty is owed, defendants move to dismiss Robert Mueller, Director of the FBI, because USCIS, not the FBI, is responsible for processing plaintiff's N-400 application. The court will address each argument in turn.

## I. Jurisdiction over USCIS under the APA and Mandamus Act

Defendants contend that since USCIS cannot act until the background check is complete, administrative action was not inappropriately withheld or delayed and thus the Court lacks jurisdiction under the APA. Likewise, defendants argue that **mandamus** is not appropriate because USCIS owes no duty to plaintiff. However, plaintiff contends that the now twenty-two-month delay is nonetheless unreasonable, and that there is a duty to act within a reasonable time. Plaintiff additionally questions whether a name check is actually a necessary component of the background check required by statute. **[*5]** The court agrees with plaintiff that USCIS has a duty to act within a reasonable time frame. The questions of whether defendants' delay is reasonable, and whether the name check is actually required, are factual inquiries going to the merits of plaintiff's claim, and are not appropriate grounds for dismissal at this stage.

"The common-law writ of **mandamus**, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984). "A writ of **mandamus** is appropriately issued only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty to act is ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir. 1994) (internal quotations omitted). Jurisdiction extends to a United States official's authority to "take or fail to take an action as opposed to a decision taken within . . . discretion." *Patel v. Reno,* 134 F.3d 929, 931-32 (9th Cir. 1997).

"The APA authorizes suit by '[a] person suffering **[*6]** legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004) (quoting 5 U.S.C. § 702). "'Agency action' is defined in § 551(13) to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.'* The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Norton,* 542 U.S. at 61-62 (emphasis in original). In addition, § 555(b) of the APA states: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

Although plaintiff does not point to a specific time frame in which N-400 applications must be processed, plaintiff contends that there is a duty to process the applications, and allowing an unlimited time for the name check process would run contrary to the APA's requirement for action within a reasonable time.

Defendant Michael Chertoff, as Secretary of the **[*7]** Department of Homeland Security ("DHS"), overseeing USCIS, bears a responsibility for the processing of citizenship applications:

> The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers . . . .

8 U.S.C. 1103(a)(1). The Immigration and Nationality Act requires USCIS to give applicants a response to their petition for citizenship. *See* 8 C.F.R. § 335.3.

This Court agrees with plaintiff and the many district courts that have held that, taken together, the APA, and the statues and regulations governing immigration establish a clear and certain right to have applications adjudicated, and to have them adjudicated within a reasonable time frame. *See Wang v. Mukasey,* No. 07-6266, 2008 WL 1767042, *3 (N.D. Cal. April 16, 2008) (addressing an N-400 application for naturalization and holding that "[t]he court declines to find that the USCIS **[*8]** has no nondiscretionary duty in this case based solely on the fact that the FBI has not completed its background check"); *Sidhu v. Chertoff,* No. 07-1188, 2008 U.S. Dist. LEXIS 13804, 2008 WL 540685, *5 (E.D. Cal. Feb. 25, 2008) ("The Ninth Circuit has confirmed that inaction involves a nondiscretionary act ... [t]hus Defendants' delay in adjudicating Plaintiff's [N-400] application is a non-discretionary act."); *Alibeik v. Chertoff,* No. 07-1938, 2007 U.S. Dist. LEXIS 86289, 2007 WL 4105527, *5 (N.D. Cal. Nov. 16, 2007) ("[S]imply asserting a need to

await results of an FBI name check does not suffice to show that delay was reasonable as a matter of law."); *Clayton v. Chertoff,* No. 07-2781, 2007 U.S. Dist. LEXIS 76514, 2007 WL 2904049, *5 (N.D. Cal. Oct. 1, 2007) ("To accept Defendants' argument that timing is always a matter of discretion beyond the Court's power would enable them to avoid judicial review even of adjudications that were postponed indefinitely. This would eviscerate § 706(1) of the APA ...."); *Xiao v. Gonzalez,* No. 07-0556, 2007 U.S. Dist. LEXIS 69789, 2007 WL 2688464, *3 (N.D. Cal. Sept. 10, 2007); *Konchitsky v. Chertoff,* No. 07-0294, 2007 U.S. Dist. LEXIS 53998, 2007 WL 2070325, *3 (N.D. Cal. July 13, 2007); *Gelfer v. Chertoff,* No. C 06-6724, 2007 U.S. Dist. LEXIS 26466, *4-5 (N.D. Cal. Mar. 22, 2007); *Dmitriev v. Chertoff,* No. 06-7677, 2007 U.S. Dist. LEXIS 35508, 2007 WL 1319533, *3 (N.D. Cal. May 4, 2007); **[*9]** *Wu v. Chertoff,* No. 06-7880, 2007 U.S. Dist. LEXIS 33816, 2007 WL 1223858, *3 (N.D. Cal. Apr. 25, 2007); *Singh v. Still,* 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007); *Aboushaban v. Mueller,* No. C. 06-1280, 2006 U.S. Dist. LEXIS 81076, 2006 WL 3041086, *2 (N.D. Cal. Oct. 24, 2006); *Song v. Klapakas,* No. 06-5589, 2007 U.S. Dist. LEXIS 27203, *10 (E.D. Penn. April 12, 2007) ("[E]ven though the actual decision to grant or deny an application for adjustment is discretionary, UCIS has a non-discretionary duty to act on applications within a reasonable time.").

Accordingly, where defendants unreasonably delay or fail to take action, the Court has jurisdiction to hear plaintiff's complaint under both the writ of **mandamus** and the APA. The Court has reviewed defendants' papers, and finds nothing to compel the conclusion that the present delay is a "reasonable time" as a matter of law. Plaintiff alleges in his complaint that defendants have delayed almost seventeen months in adjudicating his N-400 application. Defendants have provided a detailed description of the FBI name-check process in an attempt to explain the delay. The amount of time that is reasonable is a "fact specific inquiry that is premature at the jurisdiction stage." *Sidhu,* 2008 U.S. Dist. LEXIS 13804, 2008 WL 540685, at *7; **[*10]** *see also Gelfer,* 2007 U.S. Dist. LEXIS 26466, at *6 ("On this motion to dismiss, it is premature to consider the exact sources of the delay to determine whether the delay was actually unreasonable under the circumstances."). Therefore dismissal is inappropriate. *See Trentacosta,* 813 F.2d at 1558 (finding a factual decision inappropriate where the jurisdictional inquiry goes to the merits of the actual claim).

## II. Jurisdiction over Defendant Mueller

Defendants assert that the Department of Homeland Security, lead by defendant Chertoff, is solely responsible for implementing immigration laws, and thus plaintiff has not established jurisdiction over defendant Mueller, Director of the FBI. Plaintiff contends, however, that by reading together the statutes and regulations requiring background checks, a duty is imposed on the FBI. The Court finds that the various immigration regulations and statutes do impose a duty on defendant Mueller in his official capacity. Accordingly, dismissal is not appropriate.

Although immigration adjudications are the domain of DHS, specific duties may be conferred on other entities. *See* 8 U.S.C. § 1103(a) (1) (giving immigration responsibility to the Secretary of **[*11]** Homeland Security, but noting exceptions for other officers); 8 U.S.C. § 1446(a) (requiring citizenship applicants to undergo a background check done by a USCIS employee or another government employee); 8 C.F.R. § 2.1 (assigning immigration authority to the Secretary of Homeland Security, but allowing for delegation to government employees). The FBI is assigned responsibility for completing background checks. *See* 8 C.F.R. § 335.2; *see also* 1998 Appropriations Act, Pub. L. 105-119, 111 Stat. 2440, 2448-49 (withholding funds unless an FBI background check is completed).

The Court finds that, reading these regulations and statutes together, there is congressional authority for agencies other than DHS to have responsibility for aspects of the immigration application, and the FBI has been given responsibility for background checks and therefore has a duty to complete the checks within a reasonable time. This finding is consistent with other recent decisions in this district, as well as decisions from other circuits. [1] *Wang,* 2008 WL 1767042 at *2 ("The Court . . . finds that the FBI has a mandatory duty to complete its background check on naturalization applicants in a reasonable time."); **[*12]** *see also Moretazpour v. Chertoff,* No. 07-4264, 2007 U.S. Dist. LEXIS 92047, 2007 WL 4287363 (N.D. Cal. Dec. 5, 2007); *Kaplan v. Chertoff,* 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007) ("[W]here Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks.").

### FOOTNOTES

[1] Judge Ronald Whyte's very recent decision in *Wang* was brought to the Court's attention by the government's attorney at oral argument. The Court appreciates the government's disclosure of this relevant case.

Additionally, the Court agrees with plaintiff's argument that dismissing defendant Mueller would allow the government to play a "shell game" of shifting responsibility. If this Court were to find, on the merits, that USCIS was justified in delaying because of an incomplete response from the FBI, then absent jurisdiction over defendant Mueller, plaintiff might have no recourse to compel the government to complete his name check and process his application. This result would run counter to the rationale in this district **[*13]** of finding jurisdiction under the APA and the **Mandamus** Act because plaintiff has a right to action within a reasonable time. *See Wang,* 470 F. Supp. 2d at 1068 ("The critical issue is not whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government *qua* government is responsible.") (citing *Paunescu v. INS,* 76 F. Supp. 2d 896, 903 n.2 (N.D. Ill. 1999)).

The court is aware that other courts in this district have dismissed the FBI as a defendant in some immigration application actions. *See Alibeik,* 2007 U.S. Dist. LEXIS 86289, 2007 WL 4105527 at *3; *Clayton,* 2007 U.S. Dist. LEXIS 76514, 2007 WL 2904049 at *3; *Konchitsky,* 2007 U.S. Dist. LEXIS 53998, 2007 WL 2070325 at *6; *Dmitriev,* 2007 U.S. Dist. LEXIS 35508, 2007 WL 1319533 at *4. Those courts found no duty owed on behalf of the FBI. However, as explained in *Moretazpour* and *Wang,* those decisions involved 1-485 applications, not N-400 applications, and the FBI's duty "does not arise in cases involving the adjudication of I-485 applications

for permanent residency, because the FBI's involvement in conducting background checks arises by contract rather than by statute. Therefore, [] previous decisions to dismiss the FBI are distinguishable." *Wang*, 2008 WL 1767042 at *2.

Accordingly, **[*14]** the Court finds that the APA and the writ of **mandamus** provide jurisdiction over defendant Mueller. The Court does not, however, rule as to whether the FBI has breached a duty by delaying unreasonably. As discussed above, the reasonableness of the delay is a fact-specific dispute, not appropriate for dismissal at this stage. Likewise, plaintiff contends that although a background check is required, the name check is not a necessary component of that process. This issue goes to the merits of plaintiff's claim - whether USCIS's delay, premised on the name check, is reasonable - and the Court will not reach it at this time. Whether or not a name check is a required component of the FBI's background check, the Court holds that it has jurisdiction over defendant Mueller due to the FBI's duty to complete a background check, however constituted.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to dismiss for lack of jurisdiction [Docket No.6].

**IT IS SO ORDERED.**

Dated: April 28, 2008

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge

Source:  My Sources > Federal Legal - U.S. > **Federal & State Cases, Combined** 🔲
Terms:  **sidhu and mandamus**  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, June 27, 2008 - 7:04 PM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
🔲 -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
❶ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

**LexisNexis®**  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.