JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JORGE ADAN ARREOLA, | No. C 08-777 JF |
|     Plaintiff, | |
| v. | DEFENDANTS' REPLY |
| MICHAEL B. MUKASEY, United States Attorney General; et al., | Date: July 18, 2008<br>Time: 9:00 a.m.<br>Ctrm: 3 |
|     Defendants. | |

**I. INTRODUCTION**

In opposition to Defendants' Motion for Summary Judgment, Plaintiff asserts that the Court has jurisdiction over his claim, and argues that the delay at issue is unreasonable.[1] Because Congress has mandated that no naturalization application be adjudicated until a full criminal background check is completed, Plaintiff cannot establish the existence of a mandatory duty that is owed to him. For the same reason, the delay at issue is reasonable. Accordingly, summary judgment should be granted in Defendants' favor.

---

[1] However, Plaintiff does not request any relief. Rather, he suggests that he should be allowed to conduct discovery. As explained further below, Plaintiff has failed to make a proper motion under Fed. R. Civ. P. 56(f). Moreover, Plaintiff's discovery request would not elicit any information that is not already available on Westlaw or Lexis-Nexus.

REPLY
C 08-777 JF                           1

**II.    ANALYSIS**

A.    THE COMPLAINT SHOULD BE DISMISSED

This is not a mandamus action seeking adjudication of an adjustment of status application, such as the Court encountered in previous cases. See Tang v. Chertoff, No. 07-0683 JF, 2007 WL 1650945 (N.D. Cal. June 5, 2007). Rather, in this mandamus action, Plaintiff seeks an order compelling adjudication of his naturalization application, which was filed in September 2006. While Defendants have a duty to process his application, Defendants also have a duty to follow their own regulations.

Under United States Citizenship and Immigration Services' ("USCIS") regulations, the requisite investigation of naturalization applicants includes "a full criminal background check" performed by the Federal Bureau of Investigation ("FBI"). 8 C.F.R. § 335.2(b). USCIS cannot adjudicate any naturalization application without a "definitive response" from the FBI that a full criminal background check has been completed. Id.; Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998 ("1998 Appropriations Act"), Pub. L. 105-119, 111 Stat. 2440, 2448-49.

The Mandamus Act vests district courts with original jurisdiction of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus is an extraordinary remedy, "available to a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty" that is free from doubt. Cheney v. United States District Court, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); see also Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (same).

In the instant case, Plaintiff's claim is neither clear nor certain because his application process is ongoing, and Defendants have not run afoul of any laws requiring that they conduct background investigations in a certain amount of time. See, e.g., Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's <u>exercise of discretion</u> in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."(emphasis added)). Further, "it is at best unclear whether

1 Congress intended to impose any mandatory duty on the FBI." Hamandi v. Chertoff, – F. Supp. 2d –, 2008 WL 1958931, at *5 (D.D.C. May 6, 2008) (citation omitted).  In short, Defendants have no duty to expedite a background check simply because Plaintiff desires immediate results.

Moreover, while USCIS has a nondiscretionary duty to process Plaintiff's application, government agencies have a fair amount of discretion when it comes to the procedures and timelines for handling immigration matters.  See, e.g., 8 U.S.C. § 1446(a) (granting the Secretary discretion to waive the personal investigation requirement); c.f., INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'").  Although Plaintiff reads in a "reasonable amount of time" element into the statutory scheme of naturalization, Plaintiff has produced nothing, except his own impatience, to suggest that a twenty-one month wait is unreasonable as a matter of law, and even then, deserving of the extraordinary writ of mandamus.  As noted by other courts, "[b]ecause USCIS is already fulfilling and stands ready to continue fulfilling its every obligation under the law, Plaintiff shall have his requested remedy once the FBI completes its background investigation." Khosravani v. Chertoff, No. 08-cv-0220 W, 2008 WL 2047996, at *2 (S.D. Cal. May 13, 2008).

Plaintiff can identify no law or regulation that imposes a nondiscretionary duty upon the FBI to complete Plaintiff's name check.  Certainly, the FBI has no duty to complete Plaintiff's background check immediately or in a certain manner.  Accordingly, mandamus is unavailable because the FBI already is taking action, and by asking the Court to compel USCIS to request an expedited name check, Plaintiff "simply wish[es] to force [the FBI] to complete the adjudication in a more expeditious manner." Mustafa v. Pasquerell, No. SA05CA-658-XR, 2006 WL 488399, at *5 (W.D. Tex. Jan. 10, 2006) (citing Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 65 (2004)).

Notably, the majority of courts to consider this issue have dismissed the complaints.[2]  See Du v. Chertoff, No. C 08-00902 WHA, – F. Supp. 2d –, 2008 WL 2264558 (N.D. Cal. June 2, 2008)

---

[2] Plaintiff's reliance on cases involving adjustment of status applications is misplaced. Plaintiff's Opposition, pp. 10-12.

REPLY
C 08-777 JF                                    3

1  (dismissing for lack of subject matter jurisdiction); Vaghefi v. Chertoff, No. CV07-1968 LEW, 2008
2  WL 636248, at *1 (E.D. Cal. Feb. 27, 2008) (same); Alzuraiki v. Heinauer, No. 07CV3189, 2008
3  WL 413861, at *4 (D. Neb. Feb. 13, 2008) (same); Chen v. Gonzalez, No. 07-C-844, 2008 WL
4  282764, at *1 (E.D. Wis. Jan. 30, 2008) (same); Ibrahim v. Chertoff, 529 F. Supp. 2d 611, 614
5  (E.D.N.C. 2007) ("Plaintiff does not have a right to compel CIS to process his application faster
6  because it cannot further proceed on the application, including examining plaintiff, until the name
7  check is complete, which of course CIS does not control."); Omar v. Mueller, 501 F. Supp. 2d 636,
8  640 (D.N.J. 2007) ("[T]he USCIS is not required to process a naturalization application or conduct
9  an interview within a certain time period. . . . Nor have Plaintiffs cited any authority compelling the
10 FBI to complete the name check within a specified time period."); Dairi v. Chertoff, No. 07cv1014
11 JM, 2007 WL 3232503, at *2 (S.D. Cal. Nov. 1, 2007) (noting that "Defendants are precluded from
12 proceeding with an applicant interview . . . , as requested by Plaintiff, until completion of the FBI
13 background investigation[,]" and dismissing the complaint); Ahmed v. Mueller, No. 07-0411, 2007
14 WL 2726250, at *6 (E.D. Pa. Sept. 14, 2007) (dismissing similar action for lack of subject matter
15 jurisdiction); Al Gadi Gadi v. Chertoff, No. CV-F-07-090 LJO, 2007 WL 1140825, at *5 (E.D. Cal.
16 Apr. 17, 2007) ("[B]ecause the full background check is not complete . . . he is not yet entitled to
17 an examination."). Accordingly, Plaintiff is not entitled to a writ of mandamus at this juncture, and
18 the Complaint should be dismissed.

19      B.   ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT
             IN DEFENDANTS' FAVOR
20

21      Plaintiff erroneously asserts that Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70,
22 80 (D.C. Cir. 1984) ("TRAC") is inapplicable "at the jurisdiction stage." Plaintiff's Opposition,
23 p. 16. Defendants have moved the Court for an order granting summary judgment in their favor.
24 Accordingly, it is precisely at this juncture that the Court should make this inquiry.

25           1.   The Delay Is Not Unreasonable

26      Plaintiff asserts that courts in this district have held that "a delay of approximately two years
27 due to an uncompleted FBI background check is unreasonable as a matter of law." Plaintiff's
28 Opposition, p. 16. However, each of the cases cited by Plaintiff address delay in adjudication of

REPLY
C 08-777 JF                                         4

1  adjustment of status applications, not naturalization applications.  Shaikh v. Gonzales, No. C 07-
2  0506 MEJ, 2007 WL 4259410, at *1 (N.D. Cal. Dec. 3, 2007); Dong v. Chertoff, 513 F. Supp. 2d
3  1158, 1159 (N.D. Cal. 2007); Huang v. Chertoff, No. C 07-0277 JF, 2007 WL 1831105, at *1 (N.D.
4  Cal. June 25, 2007).  No court in this district has addressed whether USCIS's decision to follow a
5  congressional mandate can constitute unreasonable delay.

6        Judge Alsup has noted that "Congress has explicitly stated that no naturalization application
7  can be adjudicated until [USCIS] has received the results of the background check." Du, 2008 WL
8  2264558, at *3; 1998 Appropriations Act, Pub. L. 105-119, 111 Stat. 2440, 2448-49 (directing
9  USCIS to await the results of a full criminal background check before adjudicating a naturalization
10  application).  Thus, because USCIS is following a congressional mandate, the delay on the part of
11  USCIS is imminently reasonable.

12        Moreover, Plaintiff has not cited a single case setting a timetable on the FBI's background
13  investigation.  Indeed, an overwhelming number of courts have held that they cannot do so.  Eldeeb
14  v. Chertoff, No. 07-cv-236-T-17EAJ, 2007 WL 2209231, at *21 (M.D. Fla. July 30, 2007)
15  (dismissing the FBI, stating that the duty owed by the FBI is to USCIS, not the plaintiff); Konchitsky
16  v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6-7 (N.D. Cal. July 13, 2007) (stating
17  "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform
18  name checks . . . have overwhelmingly concluded that they do not."); Yan v. Mueller, No. H-07-
19  0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ("The evidence shows that the delay is
20  due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of
21  discretion in determining the timing for conducting the many name check requests that it receives
22  and the manner in which to conduct those checks." (emphasis added)); Dmitriev v. Chertoff, No. C
23  06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007) (dismissing the FBI without
24  comment on jurisdiction); Li v. Chertoff, et al., 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007)
25  ("Additionally, Plaintiff has not pointed to any statute or regulation requiring the FBI to complete
26  her name check in any period of time, reasonable or not.").

27        The extent of the FBI's discretion in conducting immigration name checks is underscored
28  by recently passed legislation seeking to reduce backlogs in personnel-related background checks.

See Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring 90% of personnel security clearances to be completed on average within sixty days "to the extent practical"). Had it wished to do so, Congress could have enacted deadlines for the performance of the FBI's immigration name checks, and could have subjected this process to judicial review. Congress's decision to not impose deadlines upon the FBI in completing immigration name checks further indicates that this process remains within the FBI's sole discretion, and the FBI's decisions regarding when and how to devote scarce resources to complete immigration name checks are not subject to judicial scrutiny. Cf. Haig v. Agee, 453 U.S. 280, 300 (1981) ("congressional acquiescence may sometimes be found from nothing more than silence in the face of an administrative policy.") (citing Zemel v. Rusk, 381 U.S. 1, 11 (1965)); see also Block v. Community Nutrition Inst., 467 U.S. 340, 349 (1984) (noting that "the collective import of legislative and judicial history behind a particular statute" may demonstrate that Congress did not wish to confer jurisdiction upon a court to review agency action (internal citations omitted)).

Plaintiff also cites 8 U.S.C. § 1447(b) for the proposition that there is a 120 day timetable for adjudication of naturalization applications after the examination. Plaintiff's Opposition, p. 17. However, because Plaintiff has not yet been examined on his application, this statute is inapplicable here. Indeed, what is applicable is the fact there is a congressional mandate against acting on Plaintiff's application.

Plaintiff states that he has satisfied the good moral character requirement of naturalization.[3] Plaintiff's Opposition, p. 17. The FBI background investigation is an essential part of confirming Plaintiff's eligibility for naturalization, and Plaintiff is not entitled to skip this component simply because he asserts in a legal pleading that he is a person of good moral character. See, e.g., Shalabi v. Gonzales, No. 4:06CV866 RWS, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) ("A background check that is rushed and incomplete due to an artificial, court imposed deadline would not meet the statutory and regulatory requirements of a 'full criminal background check' before the

---

[3] In his Statement of Facts, Plaintiff asserts the same, and cites to his own affidavit which he asserts was attached to his Opposition as Exhibit 2. However, Exhibit 2 is a copy of the I-130 visa petition filed on behalf of his wife, and there does not appear to be such an affidavit among his submitted exhibits.

REPLY
C 08-777 JF                                        6

1  USCIS can make a determination on an application.").

2  Plaintiff asserts that because his wife is in removal proceedings, his application should be
3  expedited. Plaintiff's Opposition, p. 18. However, as Judge Alsup noted, the expedition of name
4  checks is under the discretion of USCIS. Du, 2008 WL 2264558, at *5. Plaintiff also asserts that
5  his background investigation is taking an unusual amount of time. Plaintiff's Opposition, p. 18.
6  Plaintiff cites an outdated USCIS Fact Sheet. Id. More recently, USCIS and the FBI announced a
7  plan for reducing the backlog in FBI name checks. See USCIS and FBI Announce Joint Plan to
8  Eliminate Backlog of FBI Name Checks, 85 No. 15 Interpreter Releases 1073 (Apr. 7, 2008).[4] As
9  that press release indicates, Plaintiff's name check falls into the third tier of name checks to be
10 completed: name checks pending more than one year but less than two years. Id. Thus, under this
11 joint plan, Plaintiff's name check will be completed by November of this year, just over two years
12 after he filed his application. See Rangaswamy Decl., p. 9 ¶ 19.

13        2.    Plaintiff Is Not Entitled To Discovery

14 Plaintiff also argues that he is entitled to discovery. Plaintiff's Opposition, p. 18. However,
15 Plaintiff has not filed a motion pursuant to Fed. R. Civ. P. 56(f). California v. Campbell, 138 F.3d
16 772, 779 (9th Cir. 1998) (stating that "Rule 56(f) requires litigants to submit affidavits setting forth
17 the particular facts expected from further discovery" and noting that the Ninth Circuit has held that
18 "failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and
19 proceeding to summary judgment."). Accordingly, his request for discovery should be denied.

20 Moreover, even if his simple statement suffices as a Rule 56(f) motion, Plaintiff's suggestion
21 that discovery might establish that other, similarly situated applicants were interviewed on their
22 applications would not establish that his application may be adjudicated in the absence of a
23 completed background check. First, a simple search of Westlaw answers his question. See, e.g.,
24 Volovnikov v. DHS, No. 07-3607 EDL, 2008 WL 666023, at *1 (N.D. Cal. Mar. 6, 2008); Shalabi,
25 2006 WL 3032413, at *1; Stepchuck v. Gonzales, No. C06-570RSL, 2006 WL 3361776, at *1 (W.D.
26 Wash. Nov. 17, 2006). In these, and many other cases, USCIS's previous failure to follow a

---

[4] The Interpreter Releases are available on Westlaw; however, for the convenience of the Court, USCIS's press release is attached hereto as Exhibit A.

REPLY
C 08-777 JF                    7

congressional mandate and its own implementing regulations led to a multitude of actions under 8 U.S.C. § 1447(b).[5] However, as noted by the district court in Stepchuck, there is no authority suggesting that "failure to complete the necessary background check <u>before</u> the examination interview <u>waives</u> the background check requirement." Stepchuck, 2006 WL 3361776, at *5 (emphasis in original). Here, USCIS <u>has</u> followed the congressional mandate and its regulations. Plaintiff's suggested discovery would not establish that he has any right to the relief he seeks.[6]

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request an order granting summary judgment in their favor.

Dated: July 3, 2008                                                    Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/s/_____
MELANIE L. PROCTOR
Assistant United States Attorney
Attorneys for Defendants

---

[5] Under this statute, if an applicant for naturalization does not receive a decision within 120 days of being examined on his application, he may seek de novo review in the district court for the district in which he resides.

[6] For that matter, Plaintiff is not entitled to know the details of others' immigration files. Such files are protected from disclosure. 5 U.S.C. § 552(b)(6). Immigration records pertaining to third parties clearly fall within this category. See, e.g., United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991) (recognizing that immigration records are "similar files" within the meaning of the Freedom of Information Act exemption).

REPLY
C 08-777 JF                                                8

EXHIBIT A



Office of Communications

# News Release

April 2, 2008

## USCIS AND FBI RELEASE JOINT PLAN TO ELIMINATE BACKLOG OF FBI NAME CHECKS
*Partnership Establishes Series of Milestones To Complete Checks*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI) today announced a joint plan to eliminate the backlog of name checks pending with the FBI.

USCIS and the FBI established a series of milestones prioritizing work based on the age of the pending name check.  The FBI has already eliminated all name check cases pending more than four years.

"This plan of action is the product of a strong partnership between USCIS and the FBI to eliminate the backlogs and to strengthen national security," said USCIS Director Emilio Gonzalez.

By increasing staff, expanding resources, and applying new business processes, the goal is to complete 98 percent of all name checks within 30 days. USCIS and the FBI intend to resolve the remaining two percent, which represent the most difficult name checks and require additional time to complete, within 90 days or less.  The goal is to achieve and sustain these processing times by June 2009.

The joint plan will focus on resolving the oldest pending FBI name checks first.  USCIS has also requested that the FBI prioritize resolution of approximately 29,800 pending name checks from naturalization applicants submitted to the FBI before May 2006 where the naturalization applicant was already interviewed.

The target milestones for processing name checks are:

| Completion Goal | Category |
| --- | --- |
| May 2008 | Process all name checks pending more than three years |
| July 2008 | Process all name checks pending more than two years |
| Nov. 2008 | Process all name checks pending more than one year |
| Feb. 2009 | Process all name checks pending more than 180 days |
| June 2009 | Process 98 percent of all name checks within 30 days and process the remaining two percent within 90 days. |

– USCIS –